Shaun Setareh (SBN 204514)
    shaun@setarehlaw.com
Thomas Segal (SBN 222791)
    thomas@setarehlaw.com
**SETAREH LAW GROUP**
315 S. Beverly Drive, Ste. 315
Beverly Hills, California  90212
Tel:   (310) 888-7771
Fax:  (310) 888-0109

Attorneys for Plaintiff,
JORGE PEREZ

## UNITED STATES DISTRICT COURT

## CENTRAL  DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE PEREZ, on behalf of himself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>vs.<br><br>PERFORMANCE FOOD GROUP, INC., a Colorado corporation; VISTAR TRANSPORTATION, LLC, a Delaware limited liability company; ROMA FOOD ENTERPRISES, INC., a California corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 2:17-CV-07128-MWF-JPR<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SHAUN SETAREH**<br><br>***Hearing Information***<br>Date:         January 28, 2019<br>Time:        8:30am<br>Courtroom:  5A<br>Judge:      Michael W. Fitzgerald<br><br><br>***Submitted Under Separate Cover***<br>1.  Declaration of Shaun Setareh;<br>2.  [Proposed] Order |

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on January 28, 2019 at 8:30 a.m., in Courtroom 5A of the above-captioned Court, located at 350 West First Street, Los Angeles, California 90012, the Honorable Michael W. Fitzgerald presiding, Plaintiff Jorge Perez ("Plaintiff"), on behalf of himself and all others similarly situated, will, and hereby does, move this Court to:

(1) Preliminarily approve the settlement described in the Settlement Agreement, attached as Exhibit 3 to the Declaration of Shaun Setareh;

(2) Approve distribution of the proposed Notice of Class Settlement to the Settlement Class;

(3) Appoint Plaintiff Jorge Perez as Class Representative;

(4) Appoint Setareh Law Group as Class Counsel;

(5) Appoint KCC LLC as claims administrator; and

(6) Set a hearing date and briefing schedule for final settlement approval and Plaintiff's fee and expense application.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration Shaun Setareh; (4) the Settlement Agreement; (5) the Notice of Class Action Settlement, including Postcard Notice; (6) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (7) the records, pleadings, and papers filed in this action; and (8) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

//

//

Respectfully submitted,

Dated:  November 30, 2018                SETAREH LAW GROUP

                                        BY  /s/ Shaun Setareh
                                            Shaun Setareh
                                            Attorneys for Plaintiff
                                            JORGE PEREZ

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I. INTRODUCTION…………………………………………………………..1

II. STATEMENT OF FACTS AND PROCEDURAL HISTORY,..……..……...2

    A. Overview of the Litigation…..……………………………………………...2

    B. Summary of Relevant Law……………..…………………………………..2

        1.  The Fair Credit Reporting Act ("FCRA")…………….. …..……….2

        2.  The Ninth Circuit's Landmark *Syed* Decision……………..………3

        3.  The Investigative Consumer Reporting Agencies Act…………....…4

    C. The Disclosure Forms at Issue………………………………….......5

        1.  Non-HireRight Forms………..……………….…..……………….5

        2.  HireRight Forms…………….…………….…….……..………8

    D. Plaintiff's Investigation and Discovery……………..……...............9

    E. The Parties Engaged in Arm's-Length Settlement Negotiations….........9

    F.  Material Terms of the Proposed Class Action Settlement…...................10

        1.  The Proposed Settlement Class………..…………….….......…..10

        2.  The Settlement Benefits………..…………..…....……………....10

        3.  A Narrow Release………..….…………....….….......................11

        4.  A Consumer-Friendly Settlement Payment Distribution………...12

        5.  The Proposed Notice to the Settlement Class………...………...12

        6.  CAFA Notice………..…………….………..………………..…..12

        7.  Proposed Attorney's Fees, Litigation Expenses, and Service Awards…..…….…..……………….……...............................13

III. ARGUMENT……………………………………..…..……….......13

    A. The Court Should Grant Preliminary Approval of the Class Settlement…..……………………………………………...........13

1. The Standard for Preliminary Approval………..………..……......13

2. The Settlement Is Reasonable In Light of the Strengths and Weaknesses of Plaintiff's Case…..………………………….....15

3. The Risk, Expense and Complexity of the Cas, Including the Risk of Denial of Certification, Favor Approval of the Settlement…....17

4. The Amount Offered in Settlement Supports Approval…..……...18

5. The Settlement Was Finalized After a Thorough Investigation....20

6. The Views of Experienced Counsel Should Be Accorded Substantial Weight…..…………………………………….…......21

7. The Presence of a Government Participant……………………….22

8. The Reaction of the Class…..………………………..……......22

B. Conditional Class Certification Is Appropriate for Settlement Purposes……………………………………………………….......22

1. The Proposed Class Meets the Requirements of Rule 23………...22

2. The Proposed Class is Sufficiently Numerous……....................22

3. There are Questions of Law and Fact that Are Common to the Class……....................................................................................22

4. Plaintiff's Claims Are Typical of the Proposed Settlement Class…………………………………………………………....….23

5. Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests of the Proposed Settlement Cases………………….…...23

6. Common Issues Predominate Over Individual Issues…………....24

7. Class Settlement Is Superior to Other Available Means of Resolution……………………………...……………………....24

C. The Proposed Class Notice Adequately Informs Settlement Class Members About the Case and Proposed Settlement……………..…...25

IV. CONCLUSION………………………………………...…..25

# TABLE OF AUTHORITIES

**Cases**

*Aceves v. AutoZone*, Case No. 5:14-CV-02032 (C.D. Cal. 2016) ..........................22

*Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007)..............................14

*Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).................................... 24, 28

*Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980).........14

*Burnthorne-Martinez v. Sephora USA, Inc*., Northern District of California Case
No. 4:16-cv-02843-YGR......................................................................................22

*Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).........................15

*Eisen v. Porsche Cars North American, Inc.*, Case No. 11- 09405, 2014 U.S. Dist.
LEXIS 14301, 2014 WL 439006, at *13 (C.D. Cal. Jan. 30, 2014.) ............ 23, 24

*Espinoza v. Bluemercury, Inc*., 2017 WL 10799553 *3 (N.D. Cal. 2017)..............20

*Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989). ....................................14

*Garza v. Brinderson Constructors, Inc*., Northern District of California Case No.
15-cv-05742-EJD .................................................................................................22

*Gribble v. Cool Transps., Inc*., 2008 U.S. Dist. LEXIS 115560, at *26 (C.D. Cal.
2008).....................................................................................................................15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ...........................13

*Lagos v. Leland Stanford Junior University*, 2017 WL 1113302 *4 (N.D. Cal.
2017)......................................................................................................................21

*Lane v. Facebook, Inc*., No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762, *4 (N.D.
Cal. Mar. 17, 2010)..............................................................................................19

*Lewis v. Southwest Airlines*, 2018 WL 400775 (N.D. Tex. 2018) .........................17

*Linney v. Cellular Alaska Partnership,* (9th Cir. 1998), 151 F.3d at 1239 .............23

*M.L. Stern Overtime Litig*., No. 07-0118- BTM, 2009 U.S. Dist. LEXIS 31650, at
*10 (S.D. Cal. Apr. 13, 2009) .............................................................................14

*Manuel v. Wells Fargo Bank*, N.A., 3:14-cv-00238, ECF No. 95 at 24 (E.D. Va
Aug. 19, 2015)......................................................................................................20

iii

*Milbourne v. JRK Residential Am., LLC, No.* 3:12CV861, 2014 WL 5529731 (E.D. Va. Oct. 31, 2014) ...................................................................................................20

*Miller v. CEVA Logistics USA Inc.*, 2015 WL 729638, *7 (N.D. Cal. 2015) .........21

*Mitchinson v. Love's Travel Stops & Country Stores, Inc.,* 2017 WL 2289342 (E.D. Cal. 2017)...........................................................................................................24

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-526 (C.D. Cal. 2004)..........................................................................................................................15

*Netflix Privacy*.................................................................................................................14

*Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ......................................23

*Parra v. Bashas,' Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008) ................................25

*Ramirez v. Trans Union LLC*, 2017 WL 5153280 (N.D. Cal. 2017) ............... 18, 25

*Reardon v. ClosetMaid*, 2011 WL 1628041, *6 (W.D. Penn. April 27, 2011).......20

*Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F. 3d at 1020).......................................................................................................................26

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ........ 19, 21

*Rohm v. Thumbtack, Inc.,* 2017 WL 4642409 (N.D. Cal. 2017) ............................22

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-59 (2007) .....................................16

*Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. 2007) ....................................................................................................................................15

*Stanton v. Boeing Company*, 327 F.3d 938, 952 (9th Cir. 2003) ...........................14

*Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017.)..........................................................3

*Torres v. Pet Extreme,* 2015 U.S. Dist. LEXIS 5136, at *14 (E.D. Cal. 2015) ......19

*Torrisi v. Tuscson Elec.*, 8 F.3d 1370, 1376 (9th Cir. 1993) ..................................15

*Toys 'R' Us FACTA Litig.*, 295 F.R.D. 438, 451 (C.D. Cal. 2014.)......................19

*Uber FCRA Litigation,* 2017 WL 2806698 (N.D. Cal. 2017) ................................22

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) ......20

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009)..........................................................................................................................25

*Perez v. Performance Food Group Inc.*

Notice of Motion and Motion for Preliminary
Approval of Class Action Settlement

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ...............................25

**Statutes**

15 U.S.C. § 1681a(e) .........................................................................................7

15 U.S.C. § 1681b (b) (2)(A) .............................................................................2

15 U.S.C. § 1681b(b)(2)(A)(i.) ..........................................................................3

15 U.S.C. § 1681n(a)(1)(A) .............................................................................18

15 U.S.C. § 1681n(a)(1)(A.) .............................................................................1

15 U.S.C. §1681b(2)(A) .....................................................................................6

15 U.S.C. §1681b(b)(2)(A)(i) ..........................................................................16

15 U.S.C.A. § 1681b(b)(2)(A)(ii) ......................................................................4

Cal. Civ. Code § 1786.50(a)(1) ........................................................................20

California Civil Code § 1786.16(2)(B.) .............................................................4

California Civil Code § 1786.2(c.) ....................................................................4

Fed. R. Civ. P. 23(a)(1) ....................................................................................25

Fed. R. Civ. P. 23(a)(2) ....................................................................................25

Fed. R. Civ. P. 23(a)(4) ....................................................................................26

Fed. R. Civ. P. 23(b)(1) ....................................................................................27

Fed. R. Civ. P. 23(e)(1)(A) ..............................................................................13

Fed. R. Civ. P. 23(e)(2) ....................................................................................13

ICRAA California Civil Code § 1786 *et seq*. ...................................................4

Rule 23(a) and (b)(3) ........................................................................................24

Rule 23(b)(3) .....................................................................................................28

Rule 23(c)(2)(B) ...............................................................................................28

Rule 23(e)(1) .....................................................................................................28

## MEMORANDUM OF POINTS AND AUTHORITIES

# I.   INTRODUCTION

Plaintiff Jorge Perez ("Plaintiff") moves the Court to preliminarily approve a class action settlement ("Settlement Agreement") with Defendants Performance Food Group, Inc. and Vistar Transportation, LLC (collectively, "PFG" or "Defendants") that confers substantial relief in the form of a $1,995,000 common fund representing statutory penalties to all Settlement Class Members. Class Members will not need to make claims but will be mailed checks directly. No money will revert to Defendants. Instead, after a second distribution to people who cashed their initial checks, any residue from uncashed checks will go to a *cy pres* recipient. (The parties suggest Public Justice as the recipient.)

The Complaint claims that PFG violated the Fair Credit Reporting Act ("FCRA") and related California laws. Plaintiff alleges that PFG failed to provide applicants with a stand-alone document that consists *solely* of the disclosure, as required under State and Federal law. Instead, Plaintiff alleges that the disclosure forms used included impermissible extraneous information.

In an FCRA case, a prevailing plaintiff who demonstrates that the defendant acted willfully will receive statutory damages of between $100 and $1,000. 15 U.S.C. § 1681n(a)(1)(A.) The settlement amount of $1,995,000 is a good result for the class. The gross settlement amount of $62.34 and net settlement of approximately $43.96 per class member compare favorably to recent FCRA settlements in the Central District.

Under the Settlement, settlement class members will receive funds from the settlement, unless they choose to opt out. (Settlement Agreement ¶ 3(K)(6).) Defendants estimate that there are approximately 32,000 putative class members. (Settlement Agreement ¶ 1(d).)

To arrive at this settlement, Plaintiff engaged in arm's-length negotiations with PFG, finally reaching an agreement following a mediation session with

mediator Michael Dickstein, Esq.  The terms of the settlement are stated in the Settlement Agreement, attached as Exhibit 3 to the declaration of Shaun Setareh. (*Id.* ¶ 14.)

In light of the risks of continuing with this litigation, Plaintiff submits that this proposed settlement is fair, reasonable, and adequate.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. Overview of the Litigation

On August 18, 2017 Plaintiff filed this case in the Superior Court of the State of California for the County of Los Angeles alleging violations of the FCRA, the California Investigative Consumer Reporting Agencies Act ("ICRAA") and the California Consumer Credit Reporting Agencies Act ("CCRAA"). The action alleges that Defendants conducted pre-employment background checks without complying with the requirements of those statutes, including the requirement of 15 U.S.C. § 1681b(b)(2)(A) that the background check be disclosed in a document that "consists solely of the disclosure."

On September 27, 2017, Defendants removed the Action to the United States District Court for the Central District of California. (ECF No. 1).

### B.  Summary of Relevant Law

### 1.    The FCRA.

The FCRA, including, specifically, 15 U.S.C. § 1681b(b), requires employers to use certain documents and to follow specified policies and practices when they use "consumer reports" to assess the qualifications of prospective and current employees.

Pursuant to section 1681b(b)(2) of the FCRA, no person can obtain a consumer report for employment purposes without first providing a "clear and conspicuous disclosure . . . in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i). The person obtaining the consumer report must also obtain the consumer's written authorization, which can be done as part of the

disclosure form. 15 U.S.C. § 1681b(b)(2)(A)(ii).  A plaintiff may be entitled to statutory and punitive damages when a defendant has willfully violated the provisions of the FCRA. 15 U.S.C. § 1681n(a)(1)(A) ("Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . damages of not less than $100 and not more than $1000 . . . [and] such amount of punitive damages as the court may allow.").

2.     **The Ninth Circuit's Landmark *Syed* Decision.**

In 2017, the Ninth Circuit issued a major decision on the issue of violation of the stand-alone disclosure requirement of the FCRA. *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017).  In *Syed*, the FCRA disclosure contained a term purporting to waive any liability of the employer related to the background check. *Id.* at 498. The Ninth Circuit held that under the plain language of the FCRA that the required disclosure must be in "a document that consists solely of the disclosure," the inclusion of the liability release was impermissible: "We must begin with the text of the statute. Where congressional intent has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive . . . . The ordinary meaning of 'solely' is '[a]lone; singly' or entirely exclusively." *Id*. at 500.

While *Syed* involved a liability release, its holding is potentially broader. *Syed* broadly analyzed the "solely" requirement governing the disclosure apart from any release language:

> "It is our duty to give effect, if possible, to every clause and word of a statute." *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (internal quotation marks omitted). M-I's interpretation fails to give effect to the term "solely," violating the precept that "statutes should not be construed to make surplusage of any provision." *Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801, 804 (9th Cir. 1989) (alterations and internal quotation marks omitted). ***That other FCRA provisions mandating disclosure omit the term "solely" is further evidence that Congress intended that term to carry meaning in 15 U.S.C. § 1681b(b)(2)(A)(i)***. *See* 15

U.S.C. §§ 1681d, 1681s-3.    *Syed*, 853 F.3d at 501 (emphasis added).

### 3.    The Investigative Consumer Reporting Agencies Act.

Plaintiff also asserts a cause of action under California's Investigative Consumer Reporting Agencies Act, Cal. Civ. Code § 1786 *et seq*. Under the ICRAA, an "'investigative consumer report' means a report in which information on a consumer's character, general reputation, personal characteristics or mode of living is obtained through any means." Cal. Civ. Code § 1786.2(c). When an employer obtains an investigative consumer report, the employer must provide "a clear and conspicuous disclosure in writing to the consumer at any time before the report is procured or caused to be made in a document that consists solely of the disclosure." Cal. Civ. Code § 1786.16(2)(B).

### C. The Disclosure Forms at Issue

Some of the disclosure forms in effect during the class period are attached to the Declaration of Shaun Setareh as Exhibits 1 and 2. Plaintiff contends that all forms violate the stand-alone disclosure requirement.[1]

### 1. Non-HireRight Forms

Defendants used several background check forms throughout the class period, all of which are deficient and contain extraneous terms. The Non-HireRight forms labeled PFG000001-PFG000009 and PFG000016-PFG000039 are included as Exhibit 1 to the Declaration of Shaun Setareh. Some of these forms are discussed below.

For example, the form bates-stamped PFG00001-6 is a single six page document with 281 lines of text.  It is a full employment application which also

---

[1] The following descriptions represent Plaintiff's characterizations of the forms. Defendants believe that, based on the way each form was presented (whether hard copy or electronically) and the information that it contains, all of the forms at issue comply with the FCRA, the ICRAA, and the CCRAA.

contains FCRA language. Defendants estimate that at least 5,039 class members received just this document, which Plaintiff contends clearly contains extraneous information. Defendants estimate that at least an additional 431 class members received this document and another allegedly deficient form. Form PFG00001-6 includes at least the following extraneous information in addition to the disclosure:

- Requests for the applicant's contact information, previous addresses, driver's license and prior names

- Information regarding what date the applicant can work

- What position they are applying for

- Who referred the applicant

- If the applicant is on layoff subject to recall

- Applicant's citizenship

- Information regarding the applicant's criminal past

- Employment history, including salary information and reason for leaving

- A request for Defendants to have permission to contact past employers

- Whether relatives worked for Defendants

- Education history, skills and certifications

- Certifications that the provided information is true

- Granting permission to Defendants themselves to verify information in the application

- A statement that drugs are prohibited, and that the applicant is willing to submit to drug tests

This 6 page form clearly contains a large amount of extraneous information.

At least 374 applicants received the form Bates-labeled PFG00007. It

contains allegedly extraneous information, including state law notices. The form states that class members who "live or work for the Company in California, Minnesota or Oklahoma" may "Check this box if you would like a free copy of your background check report." *Id.*

Form PFG00008 includes similar information pertaining to Minnesota, California and Oklahoma applicants. Plaintiffs assert that this form is also improper because it grants Defendants themselves the right to conduct background checks, which is different than allowing a consumer reporting agency permission to conduct a background check. The form defines Vistar as "the company." The form states: "I understand that you may be requesting information concerning my worker's compensation claims, motor vehicle history and criminal history . . . Upon my written request to the company within a reasonable period of time after my receipt of this disclosure the company shall make a complete and accurate disclosure of the nature and scope of the information requested . . . ."

Plaintiff contends that the authorization to organizations to release information to Vistar itself is extraneous to the FCRA disclosure. The FCRA disclosure requirement applies to "consumer reports." 15 U.S.C. §1681b(2)(A). A "consumer report" is a report by a "consumer reporting agency." 15 U.S.C. § 1681a(d)(1). A "consumer reporting agency" is "any person which, for monetary fees or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(e). Defendants' own investigation is separate, and assuming that there is some other legal requirement that it obtain permission so it can contact government agencies and former employers, Vistar cannot use the FCRA disclosure form to obtain that permission.

Form PFG00009 was received by at least 230 individuals. It contains

allegedly extraneous information, including state law notices for California, Minnesota and Oklahoma.

Plaintiff asserts that the form labeled PFG000016-19 is also unlawful and contains extraneous language. It is a 4 page document with about 105 lines. It contains state specific language for California, Maine, Massachusetts, Minnesota, Oklahoma, New York, Washington and New Jersey. The form contains language regarding the "San Francisco Chance Ordinance Official Notice." This form contains further extraneous information regarding HR Plus' Privacy Policy. This form also contains blank spaces for the applicant to fill out their personal information, driver's license number and former employers' information.

Plaintiffs similarly contend that HR Plus' form produced at PFG000020 is unlawful and contains extraneous language. It contains state specific language for California, New York, Minnesota and Oklahoma.

The HR Plus form produced at PFG000021 contains similar provisions, including state specific language for California, Minnesota and Oklahoma. It also contains the following additional language:

> I, the undersigned, certify that all the information provided as part of my application for employment is true and complete to the best of my knowledge. I acknowledge that any false or misleading information in my application materials or interview may result in denial of employment or termination, if hired and that ant personal information requested, including date of birth, is requested solely for identification purposes.

The form produced at PFG000021 is also improper because it grants Vistar, its subsidiary and its agents to conduct background checks, which, as discussed above, is different than allowing HR Plus permission to conduct a background check. The form states:

> I hereby authorize Vistar Corporation and any subsidiaries ("Company") and/or its agent HRPLUS, to prepare consumer reports and/or investigative consumer reports (reference checks) about me for employment purposes…I FURTHER AUTHORIZE ALL PERONS, EMPLOYERS [ETC.] . . . TO PROVIDE ALL INFOTMAITON REQUESTED WITH RESPECT TO MY BACKGROUND, INCLUDING ANY CRIMAL RECORDS, TO COMPANY AND/OR ITS AGENT HRPLUS.

As discussed above, Defendants' own investigation is separate from the consumer reporting process, and Plaintiffs believe that Vistar cannot use the FCRA disclosure form to obtain that permission.

**2. HireRight Forms**

Defendants estimate that at least 8,323 applicants went through the HireRight background check process and therefore received the disclosure forms provided by HireRight labeled PFG000010 and PFG000012-15, included as Exhibit 2 to the Declaration of Shaun Setareh. Defendants feel strongly that the HireRight forms are compliant, but Plaintiff remains of the view that the HireRight forms contain extraneous information which makes them unlawful.  Approximately 40 applicants also received an older version of HireRight's disclosure, Bates-labeled PFG000011.

That older disclosure arguably contains extraneous information, such as language stating "I also understand that nothing herein shall be construed as an offer of employment or contract for services." This form contains state specific language for California, Minnesota and Oklahoma applicants.

HireRight Form PFG000012-15 (which was presented separately from the form labeled PFG000010) is also allegedly unlawful and contains extraneous language. It is a 4 page document with 111 lines. It contains extraneous information, such as language stating:

> I also understand that noting herein shall be construed as an offer of employment or contract for services . . . . By my signature

8

below, I also promise that the personal information I provide with this form or otherwise I connection with my background investigation is true, accurate and complete, and I understand that dishonesty or material omission may disqualify me from consideration for employment.

HireRight Form PFG000012-15 also contains state specific language for California, Massachusetts, Minnesota, New Jersey, New York and Washington applicants. The form contains language regarding the "San Francisco Chance Ordinance Official Notice." This form contains further extraneous information regarding HireRight's Privacy Policy.

### A. Plaintiff's Investigation and Discovery

Prior to and throughout the action, Plaintiff and his counsel thoroughly investigated his claims. Specifically, Plaintiff propounded Interrogatories and Requests for Production of Documents. (Setareh Decl. ¶ 10.)

As part of the investigation, Plaintiff's counsel reviewed documents produced by PFG in order to confirm which forms were used and by whom during the class period.  Plaintiff's counsel also reviewed PFG's background check policies. (Setareh Decl. ¶ 6.)  Because this case turns on Defendants' contentions that (i) their forms were compliant, and (ii) any noncompliance was not "willful" under the FCRA, Plaintiff's counsel thoroughly analyzed the evolving, and often conflicting, case law governing FCRA class actions. (Setareh Decl. ¶ 9.)

Defendants contend that each of the above allegedly extraneous excerpts is either separate from the disclosures or a lawful part of the relevant disclosures, and, therefore, lawful.

### E. The Parties Engaged in Arm's-Length Settlement Negotiations

The proposed Settlement was the culmination of protracted discussions between the parties following a thorough analysis of the pertinent facts and law at issue.  Following formal discovery, informal discovery and arm's-length

negotiations, the parties reached a settlement in principle on a class basis.  The parties held a mediation session with mediator Michael Dickstein in San Francisco on July 26, 2018. (Setareh Decl. ¶ 11.) The parties agreed to settle this matter following the mediation.

### F.   Material Terms of the Proposed Class Action Settlement

#### 1.   The Proposed Settlement Class

The settlement Class consists of:

> all individuals in the United States who:  (i) applied for a job with Defendants or Performance Food Group, Inc.'s related segments Vistar and Performance FoodService, which segments include the entities Performance Transportation, LLC; Liberty Distribution Company, LLC; Vend Catering Supply, LLC; Continental Concession Supplies, LLC; Institution Food House, Inc.; PFG PFS, LLC; Fox River Foods, Inc.; FRF Transport, Inc.; and Ohio Pizza Products Inc.; and (ii) about whom Defendants requested background checks during the Class Period, except for those that timely opt-out of the Settlement.

(Settlement Agreement ¶ 1(d).)  The Parties believe that there are approximately 32,000 Class Members as of the date of execution of the Settlement Agreement. "Class Period" means August 18, 2012 through the Preliminary Approval Date. (Settlement Agreement ¶ 1(h).)

#### 2.  The Settlement Benefits

Under the Settlement, all Class Members who do not opt out will receive an Individual Settlement Payment. To calculate the Individual Settlement Payment that each Class Member will receive, the Settlement Administrator will divide the Net Settlement Amount by the number of non-returned (*i.e.*, deliverable) Postcard Notices, and then distribute the checks to each Class Member for whom a Postcard Notice has not been returned. (Settlement Agreement ¶ 12(b).)

### 3.  A Narrow Release

Pursuant to the Settlement Agreement, Class Members release their claims as follows:

> all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, whether known or unknown, that were or could have been asserted in the Action, including, without limitation: (i) any and all claims under 15 U.S.C.§§ 1681b(b)(2)(A), 1681d(a)(1), and 1681g(c) of the Fair Credit Reporting Act; (ii) any and all analogous state law claims, including, without limitation, claims under California Civil Code § 1786 *et seq.* and California Civil Code § 1785 *et seq.*; (iii) any and all claims under California Business and Professional Code § 17200 *et seq.*; and (iv) any and all claims that relate to or arise out of the procurement by Defendants or their agents of any consumer report, investigative consumer report, consumer credit report or any other background report.
> For purposes of clarity, (i) the Released Claims explicitly include claims for actual damages, statutory damages, and punitive damages, as well as for attorneys' fees and costs; and (ii) the Released Claims explicitly exclude any claims that were or could have been brought in the pending wage and hour lawsuit captioned *Perez v. Performance Food Group, Inc., et al.*, Case No.  2:17-cv-00357-JAK-SK in the United States District Court for the Central District of California.  The *res judicata* effect of the Final Order and Judgment will be the same as that of the Released Claims.

(Settlement Agreement ¶ 1(v).)

This release is narrowly and appropriately tailored to the allegations asserted by Plaintiff in this Complaint.

### 4.  A Consumer- Friendly Settlement Payment Distribution Process

The parties have negotiated a mailing procedure to minimize the burden to Settlement Class Members. Class Members will not have to submit a claim form in order to receive payment. Instead, the Individual Settlement Payments will be mailed by First Class Mail to the Settlement Class Members. (Settlement

Agreement ¶ 12(b)(ii).) Settlement Class Members will have 120 days to cash their settlement checks. (Settlement Agreement ¶ 12(b)(iii).)

Within thirty (30) days of the 120-day check void date, the Settlement Administrator will assess whether there is any residue from uncashed checks.   In the event that the remaining funds associated with voided checks equal or exceed $40,000, within twenty (20) days of the assessment of any residue, the Settlement Administrator shall divide the funds on a *pro rata* basis among the Class Members who cashed the first checks, and shall mail a second check to each such Class Member.  (Settlement Agreement ¶¶ 12(b)(iv).)

**5.  The Proposed Notice to the Settlement Class**

Within 14 days of the Preliminary Approval Date, Defendants shall send the Settlement Administrator the Class List containing information for each Class Member. (Settlement Agreement ¶ 11(a).)

Prior to mailing the postcards, the Settlement Administrator shall conduct a search based on the National Change of Address to verify the mailing addresses of each Class Member. (Settlement Agreement ¶ 11(c).)

Within 14 days after receiving the Class List from Defendants, the Settlement Administrator shall mail a Postcard Notice to all Class Members via regular First Class U.S. Mail and shall create a website at which Class Members may obtain information about the settlement. (Settlement Agreement ¶ 11(c).)  The Postcard Notice will summarize the settlement and direct Class Members to the settlement website. (Settlement Agreement ¶ 11(c).)

**6.  CAFA Notice**

Defendants shall cause notice of the Settlement that meets the requirements of the Class Action Fairness Act ("CAFA") to be served on the appropriate federal and state officials. (Settlement Agreement ¶ 11(e).)

//

//

### 7.  Proposed Attorney's Fees, Litigation Expenses, and Service Awards

Plaintiff will seek an order from the Court awarding Class Counsel their reasonable attorneys' fees in an amount not to exceed $498,750 and out-of-pocket costs incurred in this action in an amount not to exceed $20,000. (Settlement Agreement ¶ 1(f).) Plaintiff will seek a service award in the amount of $5,000. (*Id.* at ¶ 12(c).)

## III.   ARGUMENT

### A.   The Court Should Grant Preliminary Approval of the Class Settlement

#### 1. The Standard for Preliminary Approval

Class action settlements must be approved by the court, and notice of the settlement must be provided to the class, before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). Court approval occurs in three steps: (1) preliminary approval of the proposed settlement, including (if the class has not already been certified) conditional certification of the class for settlement purposes; (2) notice to the class providing them an opportunity to object or exclude themselves from the settlement; and (3) a final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement. *See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

In reviewing class action settlements, the court should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

In the preliminary approval stage, the Court first determines whether a class exists. *Stanton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Then, the Court evaluates "whether the settlement is within the range of possible approval, such that there 'is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.'" *In re M.L. Stern Overtime Litig.*, No. 07-0118-BTM, 2009 U.S. Dist. LEXIS 31650, at *10 (S.D. Cal. Apr. 13, 2009).

The fairness and reasonableness of a settlement agreement are presumed "where that agreement was the product of non-collusive, arm's-length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig.*, No. 5:11-CV-00379-EJD, 2013 U.S. Dist. LEXIS 37286, at *11 (N.D. Cal. Mar. 18, 2013). This Settlement is the product of arm's-length negotiations, with both sides agreeing to the final terms after mediating with mediator Michael Dickstein, a distinguished mediator respected by California courts. "

In addition, the Court may consider some or all of the following factors in evaluating the reasonableness of a settlement: the extent of discovery completed and the stage of proceedings; the strength of the plaintiff's case and the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; and the experience and views of counsel. *See Churchill Vill. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

## 2.     The Settlement Is Reasonable In Light of the Strengths and Weaknesses of Plaintiff's Case

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecom. Coop.*, 221 F.R.D. at 525-26.

Here, Plaintiff alleges that PFG used forms that included both the disclosure and extraneous information in one document. Plaintiff contends that this facially violates the FCRA, which provides, in relevant part:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—(i) ***a clear and conspicuous disclosure has been made in writing*** to the consumer at any time before the report is procured or caused to be procured, ***in a document that consists solely of the disclosure***, that a consumer report may be

obtained for employment purposes; and (ii) that consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. §1681b(b)(2)(A)(i) (emphasis added).

However, the analysis does not end there. The failure to provide a legally compliant disclosure form does not result in measurable economic damages. For example, if an employment applicant was offered a job after a background check, he or she has no economic damages. But even applicants who lose jobs because of background checks and who testify that they did not know a check would be done would not be able to show economic damages. If they testify that they would have refused to allow a background check if the disclosure form had been clearer, they have no economic damages (since in that case they would not have obtained employment in any event). But, conversely, if they testify that they would have allowed the background check had they understood the disclosure form, in that case they also have no economic damages.

Thus, the viability of the case turns on the availability of statutory damages. To obtain statutory damages, Plaintiff must also prove that the violation was "willful" under 15 U.S.C. § 1681n(a).  In *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-59 (2007), the United States Supreme Court explained that "willful" applies not only to "knowing" violations of the FCRA, but to actions that constitute a "reckless disregard of statutory duty." Although *Safeco* clarified that a plaintiff need not establish that a defendant "knowingly and intentionally" committed the violations, the Court left room for defendants to claim reasonable interpretation, or even merely negligent interpretation, of the FCRA as a defense.

It should be noted that the opinion of the Ninth Circuit in *Syed* is very important to the willfulness analysis. Defendants view *Syed* as establishing a *per se* rule of willfulness as to liability releases only, not the different types of allegedly

*Perez v. Performance Food Group Inc.*                    Notice of Motion and Motion for Preliminary
                                                          Approval of Class Action Settlement

extraneous information at issue in this case. For example, Defendants could be expected to focus on the following language in *Syed*, which supports an argument that the holding is limited to liability releases: "[A] liability waiver . . . pulls the applicant's attention away from his privacy rights protected by the FCRA by calling his attention to the rights he must forego if he signs the document. Indeed, by reading M-I's Disclosure Release, a job applicant could reasonably conclude that his signature was not consent to the procurement of the consumer report, but to a broad release airing from claims arising from the 'totality' of the 'investigative background inquiries' referenced in the first sentence of the form." *Syed*, *supra* at 502.

An example of what can happen in a case like this one, where the disclosure form contains extraneous terms but not a *Syed* type liability release, is *Lewis v. Sw. Airlines Co.*, 2018 WL 400775 (N.D. Tex. Jan. 11, 2018) (a case where the plaintiff and the putative class are represented by the same counsel involved in this case). In *Lewis, supra* at *4, the district court applied *Syed* and found that certain extraneous terms in the disclosure form were unlawful: "The Court determines that the inclusion of the Acknowledgment and other extraneous information in the Consent Form violates the FCRA's stand-alone disclosure requirement." The court nonetheless concluded that any violation was not willful because "[i]n 2015 [when the form was used] the district courts that had considered whether extraneous information in an FCRA disclosure constitutes a willful violation came to conflicting answers." *Id.*

Also important in analyzing the strengths and weaknesses of the case is the issue of how much a jury would likely award in statutory damages. The FCRA provides for statutory damages of between $100 and $1,000 per violation. 15 U.S.C. § 1681n(a)(1)(A). If there were a strong likelihood that a jury would award $1,000 per violation (or close to it), then this settlement might not be viewed as a favorable one. But a recent jury verdict from a district court FCRA case illustrates the type of

case where a jury would predictably award close to the $1,000 per violation penalty. *Ramirez v. Trans Union LLC*, 2017 WL 5153280 (N.D. Cal. Nov. 7, 2017) (Order denying Motion for New Trial). *Ramirez* involved an award of over $60 million in punitive and statutory damages in a case alleging violation of 15 U.S.C. § 1681e(b), which requires credit reporting agencies to use "reasonable procedures" to ensure "maximum possible accuracy" of the information they provide. The defendant Trans Union mistakenly identified the class members as being Specially Designated Nationals on the federal government's list of "terrorists, drug traffickers and others with whom Americans are prohibited from doing business." *Id.* In addition to punitive damages, the jury awarded statutory damages of $984.22 per class member. *Id.* at *5. While Plaintiff strongly believes that Defendants did not comply with the law, and that it was willful under *Syed,* the conduct at issue here is not comparable in egregiousness to that at issue in *Ramirez*.

### 3. The Risk, Expense and Complexity of the Case, Including the Risk of Denial of Certification, Favor Approval of the Settlement

The parties are fully aware of the risks and complexity of the case. While this case is not factually complex, the uncertain legal landscape creates a substantial risk of proceeding to certification and beyond. Even if Plaintiff were to prevail in certification, the costs for both parties would mount, and Plaintiff would face "substantial risk of incurring the expense of a trial without any recovery." *See, e.g.*, *Toys 'R' Us FACTA Litig*., 295 F.R.D. 438, 451 (C.D. Cal. 2014.). Also, given that there is potentially in excess of $32 million at issue (32,000 class members multiplied by $1,000), although an award in that amount might not be likely, the parties could be expected to expend considerable resources litigating the matter.

Furthermore, substantial litigation on the FCRA has arisen only in recent years, meaning that litigants face a greater chance of changes in case law or statutory enactments that will eliminate liability. *See, e.g.*, *Torres v. Pet Extreme,* 2015 U.S. Dist. LEXIS 5136, at *14 (E.D. Cal. Jan. 15, 2015) (describing an FCRA

amendment in 2008 that insulated merchants from liability on printed expiration date on a receipt). Plaintiff thus faces additional "risk that an opinion could issue changing the legal landscape in this relatively new area of statutory law," which favors settlement. *Id.*

As set forth above there is the risk that this Court, a jury, or a reviewing court would find that PFG's conduct was not willful. Defendants allege that all of the disclosure forms are closely related to the consumer reporting process. Defendants also note that the disclosure forms do not contain liability releases, the only provisions that have been held to clearly violate the FCRA's standalone requirement.

### 4.      The Amount Offered in Settlement Supports Approval

Defendant is paying $1,995,000 to settle this case.  The Ninth Circuit has held that the reasonableness of a settlement should be evaluated in relation to the potential compensatory damages, not including any penalties that might be awarded.  *Rodriguez*, 563 F.3d at 964; *see also Miller v. CEVA Logistics USA Inc.*, 2015 WL 729638, at *7 (N.D. Cal. Feb. 19, 2015) (accepting settlement valuation based on damages exclusive of interest and penalties). The class members have relatively small amounts of money at stake. There are no measurable economic damages, only potential statutory damages. The FCRA's damages provision limits recovery in willful situations to between $100 and $1,000 or actual damages, whichever is greater. With approximately 32,000 class members, the FCRA statutory damages, *i.e.*, the core claims in the Action, are between $3,200,000 to $32,000,000. It is reasonable to assume that a jury in this case would enter an award at the lower end of the potential $100 to $1,000 range per violation and that a $32 million verdict, while permissible under the plain language of the statute, would be highly unlikely. As set forth above, *Ramirez*, which involved allegations that the defendant credit agency falsely labeled class members as drug traffickers and

terrorists, is likely typical of the kind of case where statutory damages would approach $1,000.

A recent decision evaluating whether to approve the settlement in a similar stand-alone disclosure case used the $100 per violation penalty as the comparator to judge the fairness of the settlement. *Lagos v. Leland Stanford Junior Univ.*, 2017 WL 1113302, at *4 (N.D. Cal. Mar. 24, 2017).

The total settlement amount is $1,995,000.00 for a class of approximately 32,000 class members. Class members do not need to make a claim, but will be mailed a check directly. The gross settlement amount is about $62.34 per class member ($1,995,000.00 / 32,000). The net settlement amount is approximately $43.96 per class member ($1,995,000.00 – 498,750 - 20,000 - 69,250 administrator costs / 32,000 = $43.96). Thus, the actual class member individual recovery will be 43.96 % of the potential recovery.

These numbers compare favorably with other recent settlements. *See, e.g., Rhom v. Thumbtack, Inc.,* 2017 WL 4642409 (N.D. Cal. Oct. 17, 2017)(granting final approval of a claims made settlement (albeit a non-reversionary one) where 66,676 class members shared in a $225,000 settlement, amounting to $3.30 gross per class member); *In re Uber FCRA Litig.,* 2017 WL 2806698 (N.D. Cal. June 29, 2017) (granting preliminary approval of a claims made settlement (also non-reversionary) where 1,025,954 class members shared in a $7.5 million settlement or $7.31 gross per class member); *Aceves v. AutoZone Inc.*, Case No. 5:14-CV-02032, ECF No. 58 (C.D. Cal. Nov. 18, 2016) (granting final approval where 206,650 class members shared in a $5,700,000 settlement--$27.58 gross and approximately $20 net per class member); *Feist v. Petco Animal Supplies, Inc.,* Case No. 3:16-cv-01369-H-DHB ECF No. 48 (S.D. Cal. 2018) (granting final approval; 37,279 class members shared in a $1,200,000 settlement--$32 gross and approximately $20 net per class member).

Plaintiff's counsel has obtained similar FCRA settlements in at least two other cases where preliminary approval has been granted. For example, in *Burnthorne-Martinez v. Sephora USA, Inc*., Northern District of California Case No. 4:16-cv-02843-YGR (preliminary approval granted January 8, 2018) the settlement amount was $750,000 for 11,429 class members, or $65.60 per person, a per-class member award almost identical to that contemplated in this case. (Setareh Decl. ¶ 20.) Similarly, in *Garza v. Brinderson Constructors, Inc*., Northern District of California Case No. 15-cv-05742-EJD (final approval granted July 19, 2018) the settlement amount was $1.5 million with approximately 12,818 class members or $117.02 per class member. (*Id*. ¶ 21.) In the *Sephora* and *Brinderson* cases, however, some of the forms at issue contained *Syed* type liability releases. (Setareh Decl. ¶ 22.)

### 5.     The Settlement Was Finalized After a Thorough Investigation

Courts may also consider the extent of discovery and the current stage of the litigation to evaluate whether parties have sufficient information to make an informed decision to settle the action. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). A settlement negotiated at an earlier stage in litigation will not be denied so long as sufficient investigation has been conducted. *See Eisen v. Porsche Cars N. Am., Inc.*, 2014 WL 439006, at *13 (C.D. Cal. Jan. 30, 2014).

Plaintiff engaged in extensive investigation and discovery. (*See* Setareh Decl. ¶¶ 4-8.) Based on this discovery and on their independent investigation and evaluation, Plaintiff's counsel is of the opinion that this Settlement, for the consideration and on the terms set forth in the Settlement Agreement, is fair, reasonable, and adequate.

//

//

**6.    The Views of Experienced Counsel Should Be Accorded Substantial Weight**

The fact that sophisticated parties with experienced counsel have agreed to settle their dispute should be given considerable weight by courts, since "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, the parties achieved a settlement after a thorough review of relevant documents and information, as well as an analysis of the parties' claims and defenses. The expectations of all parties are embodied by the Settlement, which, as set forth above, is non-collusive, being the product of arm's-length negotiations. Plaintiff was represented by experienced class action counsel possessing significant experience in class action matters. (*See* Setareh Decl. ¶¶ 17-18.) In fact, Plaintiff's counsel has litigated a number of FCRA class actions involving claims of disclosure forms that violate the stand-alone disclosure requirement. At least two of those cases were settled on a class-wide basis after class certification was fully briefed. (Setareh Decl. ¶¶ 20-21.) Plaintiff's counsel has several FCRA stand-alone disclosure cases where summary judgment was granted in the defendant's favor, including two such decisions after *Syed*. (Setareh Decl. ¶ 23.) As such, Plaintiff's counsel is in a good position to evaluate the likelihood of success and the settlement value of the case. Likewise, PFG's counsel, McGuireWoods LLP, is a nationally recognized defense firm that has handled many Labor and Employment matters and class actions, including numerous class and individual actions brought under the FCRA. Thus, the parties' recommendation to approve this Settlement should "be given great weight." *Eisen*, 2014 WL 439006, at *5 (crediting the experience and views of counsel in approving a settlement resolving automotive defect allegations).

//

//

21

### 7.     The Presence of a Governmental Participant

There is no governmental participant in this case. Therefore, this factor is neutral. *E.g., Mitchinson v. Love's Travel Stops & Country Stores, Inc.,* 2017 WL 2289342 (E.D. Cal. May 25, 2017) ("Because there are no separate governmental participants involved in the action, this factor is neutral . . . .").

### 8.     The Reaction of the Class

As notice has not gone out, it is premature to address this factor at this point.

### B.     Conditional Class Certification Is Appropriate for Settlement Purposes

### 1.     The Proposed Class Meets the Requirements of Rule 23

Before granting preliminary approval of the settlement, the Court should determine that the proposed settlement class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632.   An analysis of the requirements of Rule 23(a) and (b)(3), commonly referred to as numerosity, commonality, typicality, adequacy, predominance, and superiority, shows that certification of this proposed Settlement Class is appropriate.

### 2.     The Proposed Class Is Sufficiently Numerous

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, courts will find a class sufficiently numerous if it consists of 40 or more members. *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity is presumed at a level of 40 members).   Here, Defendant estimates that there are 32,000 Settlement Class Members, satisfying the numerosity requirement.

### 3.     There are Questions of Law and Fact that Are Common to the Class

The second Rule 23(a) requirement is commonality, which is satisfied "if there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

The operative criterion for commonality is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

One common question resolves the dispute: whether PFG willfully violated the law by using the allegedly unlawful forms. Accordingly, the Court should find commonality.

### 4.    Plaintiff's Claims Are Typical of the Proposed Settlement Class

"Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010).

Here, Plaintiff asserts that Settlement Class Members' claims arising from PFG's alleged unlawful use of the disclosure forms are reasonably co-extensive with the legal claims asserted by Plaintiff. Each Settlement Class Member's claims arise from the same underlying conduct—namely, PFG's failure to use a disclosure form free of extraneous language, in contravention of the FCRA's requirement for a disclosure form "consisting solely of the disclosure. Plaintiff's claims are thus typical of the Class.

### 5. Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests of the Proposed Settlement Class

Adequacy is satisfied, because "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy will be found if (1) the proposed representative plaintiff does not have conflicts of interest with the proposed class, and (2) the plaintiff is represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020.      Here, Plaintiff is adequate since he has no conflict of interest with the proposed Class. (*See* Setareh Decl. ¶ 24.) He also understands and accepts his responsibilities as a class representative. In addition, Plaintiff is represented by competent counsel with deep experience in

litigating class actions, who do not have a conflict of interest with the class. (*See* Setareh Decl. ¶¶ 17-23.) Thus, Plaintiff satisfies the adequacy prong.

### 6. Common Issues Predominate Over Individual Issues

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022.  Here, the proposed Class is maintainable under Rule 23(b)(3), as common questions predominate over any question affecting only individual members, and class resolution is superior to other available methods for a fair resolution of the controversy. *Id*. (citing Fed. R. Civ. P. 23(b)(3)).

Here, for purposes of settlement, the predominance test is satisfied, as the proposed Settlement makes relief available for all Settlement Class Members based solely on easily ascertainable criteria, bypassing the purported individual evidentiary and factual issues that could arise in litigation in determining liability or damages.

### 7.    Class Settlement Is Superior to Other Available Means of Resolution

Similarly, there can be little doubt that resolving all Settlement Class Members' claims through a single class action is superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023.

Furthermore, manageability at trial is not a concern in the class action settlement context, "for the proposal is that there be no trial." *Amchem Prods., Inc.*, 521 U.S. at 620.

//

//

**C.    The Proposed Class Notice Adequately Informs Settlement Class Members About the Case and Proposed Settlement**

Upon certifying a Rule 23(b)(3) class, Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In addition, Rule 23(e)(1) requires that before a proposed settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."

The parties have agreed on a notice plan that satisfies the requirements of Rule 23. (Settlement Agreement ¶3(k).)  Under this plan, a settlement administrator will mail a postcard to all Settlement Class Members as identified in PFG's files. The postcard notice will summarize the terms of the settlement and refer Class Members to the website for the Class Notice. (Setareh Decl. Exh. 4-5.) The Class Notice includes all the content required by Rule 23(c)(2)(B), including a description of the action and Class claims, as well as the Class Members' right to opt out of, object to, or comment on the proposed Settlement, and any application for attorneys' fees, costs, and service awards.

## IV.    CONCLUSION

The parties have negotiated a fair and reasonable settlement.  Accordingly, Plaintiff moves the Court to preliminarily approve the Settlement Agreement; direct the dissemination of notice to the class as proposed; and set a hearing date and briefing schedule for final Settlement approval and Plaintiff's fee and expense application.

Respectfully submitted,

SETAREH LAW GROUP

Dated: November 30, 2018          BY___/s/ Shaun Setareh_____
                                  SHAUN SETAREH
                                  Attorney for Plaintiff
                                  JORGE PEREZ