Shaun Setareh (SBN 204514)
    shaun@setarehlaw.com
Thomas Segal (SBN 222791)
    thomas@setarehlaw.com
**SETAREH LAW GROUP**
315 S. Beverly Drive, Ste. 315
Beverly Hills, California  90212
Tel:    (310) 888-7771
Fax:    (310) 888-0109

Attorneys for Plaintiff,
JORGE PEREZ

## UNITED STATES DISTRICT COURT

## CENTRAL  DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE PEREZ, on behalf of himself, all others similarly situated, and the general public,<br><br>    Plaintiff,<br><br>    v.<br><br>PERFORMANCE FOOD GROUP, INC., a Colorado corporation; VISTAR TRANSPORTATION, LLC, a Delaware limited liability company; ROMA FOOD ENTERPRISES, INC., a California corporation; and DOES 1-50, inclusive,<br><br>    Defendants. | Case No. 2:17-CV-07128-MWF-JPR<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AWARD OF ATTORNEY FEES AND EXPENSES; CLASS REPRESENTATIVE SERVICE AWARD; AWARD OF SETTLEMENT ADMINISTRATOR EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>_**Hearing Information**_<br>Date:            June 3, 2019<br>Time:            10:00am<br>Courtroom:    5A<br>Judge:          Michael W. Fitzgerald<br><br>_**Submitted Under Separate Cover**_<br>1. Declaration of Shaun Setareh;<br>2. Declaration of Jorge Perez;<br>3. Declaration of Jeremy Neville;<br>4. [Proposed] Order |

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on June 3, 2019 at 10:00 a.m., in Courtroom 5a of the above-captioned Court, located at 350 West First Street, Los Angeles, California 90012, the Honorable Michael W. Fitzgerald presiding, Plaintiff Jorge Perez ("Plaintiff"), on behalf of himself and all others similarly situated, will, and hereby does, move this Court to:

(1) Grant final approval of the Settlement;

(2) Award attorney fees of 25% of the gross settlement amount in the sum of $498,750;

(3) Award litigation expenses in the amount of $6,550.61;

(4) Award a class representative service payment in the amount of $5,000;

(5) Approve settlement administration expenses in the amount of $62,898.49.

Respectfully submitted,

Dated:  April 25, 2019               SETAREH LAW GROUP

BY   /s/ Shaun Setareh
     Shaun Setareh
     Attorneys for Plaintiff
     JORGE PEREZ

# **TABLE OF CONTENTS**

I. INTRODUCTION…………………………………………………...……1

II. STATEMENT OF FACTS AND PROCEDURAL HISTORY…......……….....2

    A. Overview of the Litigation…..………………………………………..2

    B. Summary of Relevant Law…………………………..………….……2

        1. The Fair Credit Reporting Act ("FCRA") …………………..……2

        2. The Ninth Circuit's Landmark *Syed* Decision………………………3

        3. The Investigative Consumer Reporting Agencies Act………………4

    C. The Disclosure Forms at Issue………………………………………5

    D. Plaintiff's Investigation and Discovery…………………………......5

    E. Law and Motion Filings in Case…………………....……………….5

    F. The Parties Engaged in Arm's-Length Settlement Negotiation………...6

    G. Material Terms of the Proposed Class Action Settlement…………..….6

        1. The Proposed Settlement Class………………..…………..…….....6

        2. The Settlement Benefits……………………………………....…..6

        3. A Narrow Release……………………………………………......7

        4. A Consumer-Friendly Settlement Payment Distribution Process...7

        5. No Reversion to Defendant…………………….……………...8

        6. Attorney's Fees, Litigation Expenses, and Service
           Awards……………………………………………………...8

        7. Notice to the Settlement Class and the Class Response…….....…8

        8. CAFA Notice…………………………………...……………..8

III. ARGUMENT………………………………………….......…………….9

    A. The Court Should Grant Final Approval of the Class Settlement……....9

    1. The Standard for Final Approval Has Been Met ……………..………9

    2. The Settlement Is Reasonable In Light of the Strengths and
        Weaknesses of Plaintiff's Case……………………………..…9

    3. The Risk, Expense and Complexity of the Case, Favor Approval

of the Settlement………………………………………….....12

4. The Risk of Maintaining Class Status Through Trial Favors
   Approval of the Settlement ……………………………….……...13

5. The Amount Offered in Settlement Supports Approval…………...14

6. The Settlement Was Finalized After a Thorough
   Investigation…..………………………………………………15

7. The Views of Experienced Counsel Should Be Accorded
   Substantial Weight……..………………………………...……...16

8. The Presence or Absence of a Governmental Participant………...17

9. The Reaction of the Class is Overwhelmingly Positive………..….17

B. Conditional Class Certification Is Appropriate for Settlement
   Purposes……………………………………………………..…...18

C. The Court Should Award The Requested Attorney Fees, Expenses,
   Settlement Administrator Expenses and Class Representative Service
   Award……………………………………………………………18

   1. The Requested Fee Award Is Reasonable……………...……...18

      a) Applicable Law Regarding Attorneys' Fees………..…………18

      b) Class Counsel Provided High Quality Representation that
         Supports the Requested Fee Award……………………………..20

      c) The Settlement Provides Benefit to the Class
         and Supports the Requested Fee Award…………………………20

      d) The Complexity of the Issues Supports the Fee Award………..20

      e) The Risk of Nonpayment Supports
         the Requested Fee Award……………………………………….21

      f) The Contingent Nature of the Settlement
         Supports the Requested Fee Award……………………………..21

      g) The Reaction of the Settlement Class
         Supports the Fee Award…………………..……………………22

h) A Lodestar Analysis Also Supports The Requested Fee……...22

2. Plaintiff's Litigation Expenses Should be Reimbursed……...…....24

3. The Settlement Administrator's Expenses Should Be Approved....25

4. The Court Should Approve An Incentive Award in The Amount
of $5,000…………………….…………………………....…..25

IV.CONCLUSION……………………………………………...…...…25

# TABLE OF AUTHORITIES

## Cases

*Beaver v. Tarsadia Hotels*
  11-cv-01842-GPC-KSC, 2017 WL 4310707 (S.D. Cal. Sept. 28, 2017)....20

*Bellinghausen v. Tractor Supply Co.*
  306 F.R.D. 245, 264 (N.D. Cal. 2014)…………………………………..22

*Boyd v. Bank of Am. Corp.*
  No. SACV 13-0561-DOC, 2014 WL 6473804, at *9
  (C.D. Cal. Nov. 18, 2014)…………………………………………………..21

*Cotter v. Lyft, Inc.*
  193 F.Supp.3d 1030, 1035 (N.D. Cal. 2016)………………………………9

*Deaver v. Compass Bank*
  No. 13-cv-222-JSC, 2015 WL 8526982, at *11 (N.D. Cal. Dec. 11, 2015)...21

*Demmings v. KKW Trucking, Inc.*
  2017 WL 1170856 at *10 (D. Or. Mar. 29, 2017)……………..……………12

*Di Giacomo v. Plains All Am. Pipeline*
  *Nos.* 99–4137 & 99–4212, 2001 WL 34633373, at *10–11
  (S.D. Fla. Dec. 19, 2001)……………………………………………………..22

*Eisen v. Porsche Cars North American, Inc.*
  (C.D. Cal. Jan. 30, 2014) Case No. 11- 09405, 2014 U.S. Dist. LEXIS
  14301, 2014 WL 439006, at *13………………………………...……...16

*Epic Systems Corporation v. Lewis*
  138 S.Ct. 612 (May 21, 2018)…………………………………..…………16

*Espinoza v. Bluemercury, Inc.*
  2017 WL 10799553 *3 (N.D. Cal. 2017)(J. Tigar)…………………………14

*Feist v. Petco Animal Supplies, Inc.*
  2018 WL 2933485 (S.D. Cal. 2018)………………………………………15

*Gilberg v. California Check Cashing Stores, LLC,*
  913 F.3d 1169 (C.A.9 (Cal.), 2019)………………………………………4, 17

*Graham v. DaimlerChrysler Corp.*
  34 Cal. 4th 553, 580 (2004)………………………………………………20

*Holloway v. Best Buy Co.,*
  C-05-5056-PJH (MEJ) (N.D. Cal.)……………………………………...…..21

*Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786- LHK, 2013 WL 496358,
  at *5 (N.D. Cal. Feb. 6, 2013)…………………………………..……..22

*In re Apple Inc. Secs. Litig.*,
  No. 5:06-CV-05208, 2011 U.S. Dist. LEXIS 52685, at *16
  (N.D. Cal. May 17, 2011)…………………………………...……………21

*In re Aremissoft Corp. Sec. Litig.*

iv

210 F.R.D. 109, 134–35 (D.N.J. 2002)…………………………………………..22

*In re Bluetooth Headset Prods. Liab. Litig.*

654 F.3d 935, 941 (9th Cir. 2011.)……………………………………………..18

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*

No. C 10-02124 SI, 2014 WL 186375, at *2 (N.D. Cal. Jan. 16, 2014)……21

*In re Heritage Bond Litig.*

No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *15

(C.D. Cal. June 10, 2005)………………………………………………………19, 20

*In re HP Laser Printer Litig.*,

2011 WL 3861703 at 5–6 (C.D. Cal. filed Aug. 31, 2011)……………..……..21

*In re Pac. Enters. Sec. Litig.*

(9th Cir. 1995) 47 F.3d 373, 378…………………………………..……….17

*In re Portal Software Inc. Sec. Litig.*

(N.D. Cal. Nov. 26, 2007) No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS

88886, *3……………………………………………………………………13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,

2013 WL 1365900, at *9…………………………………………………....21, 22

*In re Uber FCRA Litigation*

2017 WL 2806698 (N.D. Cal. 2017)………………………………………..20*In re Uber FCRA Litigation*

2018 WL 2047362 (N.D. Cal. May 2, 2018)…………………………………15

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,

19 F.3d at 1299…………………………………………………..…………20

*Johnson v. General Mills, Inc.*,

2013 WL 3213832 *6 (C.D. Cal. 2013.)……………………………………23

*Kearney v. American Honda Motor Am.*

2013 U.S. Dist. LEXIS 91636 *24………………………………………….21

*Lane v. Facebook, Inc.*

(N.D. Cal. Mar. 17, 2010) No. 08-3845-RS, 2010 U.S. Dist.

LEXIS 24762, *4………………………………………………....13

*Leland v. Lagos Stanford Junior University*

2017 WL 113302 *4 (N.D. Cal. 2017.) …………….…..................……14

*Linney v. Cellular Alaska Partnership*

(9th Cir. 1998)151 F. 3d1234, 1239, 1242 …………………………………16

*Long v Tommy Hilfiger U.S.A.*

(3d Cir. 2012) 671 F.3d 371………………………………..………..……....11

*Maley v. Del Global Techs. Corp.*

186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002)………..……………………22

*Manuel v. Wells Fargo Bank*

N.A., 3:14-cv-00238, ECF No. 95 at 24 (E.D. Va Aug. 19, 2015)…..……13

*Mathein v. Pier 1 Imports (U.S.) Inc.*
  2018 WL 1993727 *8 (E.D. Cal. April 27, 2018).............................17
*Marquez v. Bank of America*
  2018 WL 1948864 *5 (N.D. Cal. 2018)……...........……..........……....11
*Milbourne v. JRK Residential Am., LLC*
  *No.* 3:12CV861, 2014 WL 5529731 (E.D. Va. Oct. 31, 2014)...............14
*Miller v. CEVA Logistics USA Inc.*
  2015 WL 729638, *7 (N.D. Cal. 2015)……........……......……......……....14
*Milliron v. T-Mobile USA, Inc.*
  423 F. App'x 131, 135 (3d Cir. 2011)……....................……..........22
*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*
  (C.D. Cal. 2004) 221 F.R.D. 523, 525-527…….................……..……9
*Officers for Justice v. Civil Serv. Comm'n*
  (9th Cir. 1982) 688 F.2d 615, 625……..............................……..9
*Paul, Johnson, Alston & Hunt v. Graulty*
  886 F.2d 268, 271 (9th Cir. 1989)…….........................……........18
*Perfect 10 v. Giganews Inc.,*
  2015 U.S. Dist. LEXIS 54063 (C.D. Cal. 2015)……….......…….........21
*Pierce v. County of Orange*
  905 F. Supp. 2d 1017, 1036 & n.16 (C.D. Cal. 2012)…….................21
*Pokorny*
  2013 WL 3790896, at *2……........................................……..........22
*Reardon v. ClosetMaid*
  2011 WL 1628041, *6 (W.D. Penn. April 27, 2011) …….......….....13
*Rodriguez v. West Publishing Corp.*
  (9th Cir. 2000) 563 F.3d 948…….........…….......................13, 14
*Rohm v. Thumbtack Inc.*
  2017 WL 4642409 (N.D. Cal. October 17, 2017)……........….....15, 20
*Rutti,*
  2012 WL 3151077 at 11……........................................……..........21
*Safeco Ins. Co. of Am. v.Burr*
  (2007) 551 U.S. 47, 57-59……........................……..................10
*Shlahtichman v 1-800 Contacts, Inc.*
  (7th Cir. 2010) 615 F.3d 794……................................……..........10
*Smith v. CheckAmerica, Inc.*
  2017 WL 3610592 (C.D. Cal. July 18, 2017) ……......................15
*Sobel v. Hertz Corp.*
  No. 306-CV-00545-LRH-RAM, 2014 WL 5063397, at *10
  (D. Nev. Oct. 9, 2014)……....................................……........22

*Spokeo Inc. v. Roberts*,
  136 S.Ct. 1540 (2016) ……………………………….…………..…12

*Staton v. Boeing Co.*
  327 F.3d 938, 967 (9th Cir. 2003.)…………………………………....18

*Stuart v. RadioShack Corp.*
  No. C-07-4499, 2010 U.S. Dist. LEXIS 92067, at *16
  (N.D. Cal. Aug. 9, 2010)……………………..……………………..21

*Torres v. Pet Extreme*
  (E.D. Cal. Jan. 15, 2015) No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136,
  *13…………………………………………………………………...12

*Torrisi v. Tucson Elec. Power Co.*
  8 F.3d 1370, 1375 (C.A.9 (Ariz.),1993)………………………………....9

*Troester v. Starbucks Corp.*
  5 Cal.5th 829 (Cal., 2018)……………………………………….....16, 17

*Trs. Of the Constr. Indus and Laborers Health and Welfare Trust v.*
  *Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006.)…..………………..23

*Vasquez v. Coast Valley Roofing, Inc.*
  (E.D. Cal. 2010) 266 F.R.D. 482, 489……………………………..……13

*Vizcaino v. Microsoft Corp.*
  290 F.3d 1043, 1050 (9th Cir. 2002)……………………………...…..18

*Wang v. Chinese Daily News, Inc.*,
  2008 U.S. Dist. LEXIS 123824 at 8–9 (C.D. Cal. filed Oct. 3, 2008)….……21

*Woods v. Caremark, LLC*
  2016 WL 6908108 (W.D. Mo. 2016) …………………………..……12

*Willes v State Farm Fire & Cas. Co.*
  (9th Cir. 2008) 512 F.3d 565, 566…………………..…………..………10

**<u>Statutes</u>**

15 U.S.C. §§ 1681…………………………………………….…………3

California Civil Code § 1786…………………………………………4, 7

Fed. R. Civ. P. 23…………………………………………………9

ICRAA California Civil Code § 1786 *et seq*. …………………………..…4

*Perez v Performance Food Group Inc.*
                              Notice of Motion and Motion for Final Approval
                                             of Class Action Settlement

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The settlement provides substantial relief in the form of  $1,995,000 on a non-reversionary basis for Defendant's failure to satisfy various State and Federal statutes pertaining to pre-employment background checks performed on the settlement class.

Plaintiff's counsel, who vigorously prosecuted these claims, are experienced in this field and obtained a very favorable recovery on this case for the class, are seeking $498,750, in fees which represents the 9th Circuit's benchmark of 25% of the recovery; along with costs in the amount of $6,550.61.

This lawsuit asserts that Performance Food Group, Inc. and Vistar Transportation, LLC (collectively, "PFG" or "Defendants")  violated the Fair Credit Reporting Act ("FCRA") and related California law claims. Plaintiff alleges that Defendants failed to provide applicants with a stand-alone document that consists *solely* of the disclosure, as required under State and Federal law. Instead, Plaintiff alleges that the disclosure forms used included impermissible extraneous information.

This Court granted preliminary approval to the settlement of this action on January 28, 2019. ECF No. 30. Notice has gone out to the class by First Class Mail. To date there are zero objections and only two requests for exclusion.

In an FCRA case, a prevailing plaintiff will receive statutory damages of between $100 and $1,000. 15 U.S.C. § 1681n(a)(1)(A.) The settlement amount of $1,995,000 is a good result for the class. The gross settlement amount of $62.07 and estimated net settlement payment of $47 per class member compares favorably to recent FCRA settlements.

The settlement is an excellent result. The underlying legal claims under the FCRA involve substantial risk because of the uncertain and evolving legal

landscape regarding such claims. Class counsel has obtained a certain recovery for the class in face of great risk and uncertainty.

Any residue from uncashed checks will go to a *cy pres* recipient which is proposed to be Public Justice.

Accordingly, the Court should grant final approval to the settlement and also should award the requested attorney fees, expenses, class representative service award and settlement administrator expenses.

## II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. Overview of the Litigation

On August 18, 2017 Plaintiff filed this case alleging violations of the Fair Credit Reporting Act ("FCRA"), the California Investigative Consumer Reporting Agencies Act and the California Consumer Reporting Agencies Act. The action alleges that Defendants conduct pre-employment background checks without complying with the requirements of those statutes, including the requirement of 15 U.S.C. § 1681b (b)(2)(A) that the background check be disclosed in a document that "consists solely of the disclosure."

### B.  Summary of Relevant Law

### 1.      The Fair Credit Reporting Act ("FCRA")

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b), requires employers to use certain documents and to follow specified policies and practices when they use "consumer reports" to assess the qualifications of prospective and current employees.

Pursuant to section 1681b of the FCRA, no person can obtain a consumer report for employment purposes without providing a "clear and conspicuous disclosure . . .in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i.) The person obtaining the consumer report must also obtain the consumer's written authorization which can be done as part of the disclosure form. 15 U.S.C. § 1681b(b)(2)(A)(ii.)  A plaintiff may be entitled to statutory and punitive

damages when a defendant has willfully violated the provisions of the FCRA. 15 U.S.C. § 1681n(a)(1)(A): "any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . damages of not less than $100 and not more than $1000 . . . such amount of punitive damages as the court may allow."

## 2.     The Ninth Circuit's Landmark *Syed* Decision

In 2017, the Ninth Circuit issued a major decision on the issue of violation of the stand-alone disclosure requirement of the FCRA. *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017.)  In *Syed*, the FCRA disclosure contained a term purporting to waive any liability of the employer related to the background check. *Id.* at 498. The Ninth Circuit held that under the plain language of the FCRA that the required disclosure must be in "a document that consists solely of the disclosure," the inclusion of the liability release was impermissible: "We must begin with the text of the statute. Where congressional intent has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive . . . . The ordinary meaning of 'solely' is '[a]lone; singly' or entirely exclusively." *Id*. at 500. The Ninth Circuit also held that due to the clarity of the statutory language requiring that the disclosure be in a document consisting "solely" of the disclosure, "a prospective employer's violation of the FCRA is "willful" when the employer includes terms in addition to the disclosure." *Id*. at 496.

While *Syed* involved a liability release, its holding is broader. *Syed* broadly analyzed the "solely" requirement governing the disclosure apart from any release language:

> "It is our duty to give effect, if possible, to every clause and word of a statute." *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (internal quotation marks omitted). M-I's interpretation fails to give effect to the term "solely," violating the precept that "statutes should not be construed to make surplusage

of any provision." *Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801, 804 (9th Cir. 1989) (alterations and internal quotation marks omitted). ***That other FCRA provisions mandating disclosure omit the term "solely" is further evidence that Congress intended that term to carry meaning in 15 U.S.C. § 1681b(b)(2)(A)(i)***. *See* 15 U.S.C. §§ 1681d, 1681s-3.

*Syed*, 853 F.3d at 501 (emphasis added).

Put in simplest terms, "solely" means just what it appears to mean and, in Plaintiff's view, *no* implied exceptions to the "solely" requirement should be judicially added to the *one* express exception allowing the authorization to accompany the correct disclosure. The FCRA expressly states that the *sole* additional element that may be included with the disclosure is an authorization, "which authorization may be made on the document referred to in clause (i). . . ." 15 U.S.C.A. § 1681b(b)(2)(A)(ii).

The United States Court of Appeals for the Ninth Circuit has found that a background check document similar to the one here did not comply with the standalone document requirement in FCRA and ICRAA, and was not clear. *Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169 (C.A.9 (Cal.), 2019).[1] The form in *Gilberg* included references to state rights, like many of the forms here.

**3.     The Investigative Consumer Reporting Agencies Act**

Plaintiff also asserts a cause of action under California's Investigative Consumer Reporting Agencies Act. (ICRAA California Civil Code § 1786 *et seq*.) Under the ICRAA, an "'investigative consumer report' means a report in which information on a consumer's character, general reputation, personal characteristics or mode of living is obtained through any means." California Civil Code § 1786.2(c.) When an employer obtains an investigative consumer report, the employer must provide "a clear and conspicuous disclosure in writing to the consumer at any time before the report is procured or caused to be made in a

---

[1] Setareh Law Group is lead counsel in *Gilberg v. California Check Cashing Stores, Inc.*

document that consists solely of the disclosure." California Civil Code § 1786.16(2)(B.)

### C.  The Disclosure Forms at Issue

The disclosure forms at issue and why Plaintiff believes they violate the standalone disclosure requirement were discussed at length in the motion for preliminary approval. ECF No. 26 at 4:13-9:9. The forms contain various types of extraneous information including information about state law rights, statements regarding drugs, and a certification that the provided information is accurate.

### D.  Plaintiff's Investigation and Discovery

Prior to and throughout the action, Plaintiff and his counsel thoroughly investigated his claims. Specifically, Plaintiff propounded Interrogatories and Requests for Production of Documents. (Setareh Decl. ¶ 6).

As part of the investigation, Plaintiff's counsel reviewed documents produced by PFG in order to confirm which forms were used and by whom during the class period.  Plaintiff's counsel also reviewed PFG's background check policies. (Setareh Decl. ¶ 4.)  Because this case turns on Defendants' legal defense that PFG's noncompliance was purportedly not "willful" under the FCRA, and that Defendants' background check forms complied with the FCRA, Plaintiff's counsel thoroughly analyzed the evolving, and often conflicting case law governing FCRA class actions. All of this review and investigation allowed Plaintiff's counsel to structure a settlement that provides benefits directly to the persons who were required to use the allegedly unlawful forms. (Setareh Decl. ¶ 5.)

### E.  Law and Motion Filings in Case

On September 27, 2017, Defendants removed the case from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California. (ECF No. 1.)

On November 30, 2018 Plaintiff filed a Motion for Preliminary Approval of the Settlement. (ECF No. 26.)  The Court granted preliminary approval on January 28, 2019. (ECF No. 30.)

### F.  The Parties Engaged in Arm's-Length Settlement Negotiations

The proposed Settlement was the culmination of protracted discussions between the parties following a thorough analysis of the pertinent facts and law at issue.  Following formal discovery, informal discovery and arm's-length negotiations, the parties reached a settlement in principle on a class basis.  The parties held a mediation session with mediator Michael Dickstein in San Francisco on July 26, 2018. (Setareh Decl. ¶ 7.) The parties agreed to settle this matter following the mediation.

### G.   Material Terms of the Proposed Class Action Settlement

### 1. The Proposed Settlement Class

The settlement Class consists of:
> all individuals in the United States who:  (i) applied for a job with Defendants or Performance Food Group, Inc.'s related segments Vistar and Performance FoodService, which segments include the entities Performance Transportation, LLC; Liberty Distribution Company, LLC; Vend Catering Supply, LLC; Continental Concession Supplies, LLC; Institution Food House, Inc.; PFG PFS, LLC; Fox River Foods, Inc.; FRF Transport, Inc.; and Ohio Pizza Products Inc.; and (ii) about whom Defendants requested background checks during the Class Period, except for those that timely opt-out of the Settlement.

(Settlement Agreement ¶ 1(d).)  There are 32,137 Class Members. "Class Period" means August 18, 2012 through the Preliminary Approval Date. (*Id*. ¶ 1(h).)

### 2.  The Settlement Benefits

Under the Settlement, all Class Members who do not opt out will receive an Individual Settlement Payment. To calculate the Individual Settlement Payment that each Class Member will receive, the Settlement Administrator will divide the Net Settlement Amount by the number of non-returned (*i.e.*, deliverable) Postcard

Notices, and then distribute the checks to each Class Member for whom a Postcard Notice has not been returned. (Settlement Agreement ¶ 12(b).)

### 3. A Narrow Release

Pursuant to the Settlement Agreement, Class Members release their claims as follows:

> all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, whether known or unknown, that were or could have been asserted in the Action, including, without limitation: (i) any and all claims under 15 U.S.C.§§ 1681b(b)(2)(A), 1681d(a)(1), and 1681g(c) of the Fair Credit Reporting Act; (ii) any and all analogous state law claims, including, without limitation, claims under California Civil Code § 1786 *et seq.* and California Civil Code § 1785 *et seq.*; (iii) any and all claims under California Business and Professional Code § 17200 *et seq.*; and (iv) any and all claims that relate to or arise out of the procurement by Defendants or their agents of any consumer report, investigative consumer report, consumer credit report or any other background report.

> For purposes of clarity, (i) the Released Claims explicitly include claims for actual damages, statutory damages, and punitive damages, as well as for attorneys' fees and costs; and (ii) the Released Claims explicitly exclude any claims that were or could have been brought in the pending wage and hour lawsuit captioned *Perez v. Performance Food Group, Inc., et al.*, Case No. 2:17-cv-00357-JAK-SK in the United States District Court for the Central District of California. The *res judicata* effect of the Final Order and Judgment will be the same as that of the Released Claims.

(Settlement Agreement ¶ 1(v).) This release is narrowly and appropriately tailored to the allegations asserted by Plaintiff in this Complaint.

### 4. A Consumer- Friendly Settlement Payment Distribution Process

The parties have negotiated a mailing procedure to minimize the burden to Settlement Class Members. Class Members did not have to submit a claim form in order to receive payment. Instead, the Individual Settlement Payments will be mailed by First Class Mail to the Settlement Class Members. (Settlement

Agreement ¶ 12(b)(ii).) Settlement Class Members will have 120 days to cash their settlement checks. (Settlement Agreement ¶ 12(b)(iii).)

### 5. No Reversion to Defendants

Of the $1,955,000 common fund, no money will revert to the Defendants. Within thirty (30) days of the 120-day check void date, the Settlement Administrator will assess whether there is any residue from uncashed checks.  In the event that the remaining funds associated with voided checks equal or exceed $40,000, within twenty (20) days of the assessment of any residue, the Settlement Administrator shall divide the funds on a *pro rata* basis among the Class Members who cashed the first checks, and shall mail a second check to each such Class Member.  (Settlement Agreement ¶¶ 12(b)(iv).) Any remainder will be sent to the proposed *cy pres* recipient Public Justice. (*Id*. ¶¶ 12(b)(v).)

### 6. Attorney's Fees, Litigation Expenses, and Service Awards

Plaintiff seeks an order from the Court awarding Class Counsel their reasonable attorneys' fees of $498,750 (which is 25% of the settlement fund and a 2.64 multiplier over the lodestar amount) and costs of $6,550.61. (Settlement Agreement ¶ 1(f).) Plaintiff seeks a service award of $5,000. (*Id*. at ¶ 12(c).)

### 7. Notice to the Settlement Class and the Class Response

The settlement administrator KCC sent notice by mail to the Settlement Class on March 25, 2019. (Declaration of Jeremy Neville ("Neville Decl.") ¶ 6). KCC also established a case website where Settlement Class members can view documents such as the long form notice, frequently asked questions, the settlement agreement, and the preliminary approval order. (*Id*. ¶ 4). As of the date of this filing, there are two requests for exclusion and zero objections. (*Id*. ¶¶ 9-10).

### 8. CAFA Notice

Notice of the Settlement that meets the requirements of the Class Action Fairness Act ("CAFA") was served on the appropriate federal and state officials. (Settlement Agreement ¶ 11(e).)  (Neville Declaration ¶ 2).

### III.   ARGUMENT

#### A.   The Court Should Grant Final Approval of the Class Settlement

#### 1.   The Standard for Final Approval Has Been Met

In order to grant final approval of a class action settlement, the district court must determine that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(3). In making that determination, the district court looks at the following factors:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (C.A.9 (Ariz.),1993).

As set forth below, all of these factors favor approval, except the seventh factor (presence of a governmental participant) which is neutral.

#### 2.   The Settlement Is Reasonable In Light of the Strengths and Weaknesses of Plaintiff's Case

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004). In assessing the strength of the plaintiff's case and the probability for success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation omitted). There is "no single formula" to be applied, but the court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery. *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Here, Plaintiff alleges that Defendants used employment application forms that included both the disclosure form and extraneous information in the same document. Plaintiff contends that Defendants' use of these documents in employment applications facially violates the FCRA, which provides:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—(i) *a clear and conspicuous disclosure has been made in writing* to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and (ii) that consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. §1681b(b)(2)(A)(i) (emphasis added).

However, the analysis does not end there. Plaintiff must also prove that the violation was "willful" under 15 U.S.C. § 1681n(a). In *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-59 (2007), the United States Supreme Court explained that "willful" applies not only to "knowingly" violating the FCRA, but to actions that constitute a "reckless disregard of statutory duty." *See also Willes v State Farm Fire & Cas. Co.*, 512 F.3d 565, 566 (9th Cir. 2008) (applying the "reckless disregard" standard). Although *Safeco* clarified that a plaintiff need not establish that defendant "knowingly and intentionally" committed the violations, the Court left room for defendants to claim "reasonable construction" or even "careless construction" of the Act as a defense. *See, e.g., Shlahtichman v 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010) (holding that a defendant was not liable for statutory damages because the violation arose from a "reasonable construction" that the truncation requirement of § 1681c(g) was inapplicable to email receipts); *Long v Tommy Hilfiger U.S.A.*, 671 F.3d 371(3d Cir. 2012) (holding that defendant were not liable

under the FCRA because their practice was merely a "careless interpretation" of the law and is not a "willful" violation).

Plaintiff believes that this case is strong on the merits in light of *Syed v. M-I, LLC,* 853 F.3d 492 (9th Cir. 2017) which held that the inclusion of a liability release or other extraneous information in an FCRA disclosure form is a willful violation of the FCRA. But this remains a highly uncertain area of the law and the application of *Syed* by district courts has been inconsistent. For example, a recent decision from the Northern District of California interpreted the holding of *Syed* in an extremely limited manner suggesting that it applies only where  the disclosure contains "a broad release of liability for all violations of the FCRA [which has ] the clear, unambiguous and explicit language necessary to effectuate a waiver of all liability." *Marquez v. Bank of America*, 2018 WL 1948864 *5 (N.D. Cal. 2018). The disclosure forms at issue here do not contain a *Syed t*ype liability release, meaning that under Marquez the claims would not be viable.

By contrast, another recent decision of the Northern District of California agrees with the position asserted by Plaintiff in this case that any extraneous information (not just a *Syed* type liability release) constitutes a willful violation of the FCRA. *Poinsignon v. Imperva, Inc* ., 2018 WL 1709942  *4 (N.D. Cal. April 4, 2018): "The purpose of the solely requirement . . . is to focus the consumer's attention. . . . To permit in the same disclosure document an authorization loaded up with other fine print dilutes the force and clarity of the disclosure mandated by the statute." If *Poinsignon* rather than *Marquez* is followed, Plaintiff and the class would likely prevail on the merits in this case.[2]

---

[2]  In *Poinsignon*, similar to this case the extraneous information included: "references to state law, a URL link to a privacy policy, an acknowledgment of another document (a summary of rights under FCRA), and an assertion that protected health information could be obtained by way of worker's compensation documents." *Poinsignon supra* at *3.

It remains unclear what the impact of the Supreme Court's decision in *Spokeo Inc. v. Roberts*, 136 S.Ct. 1540 (2016) is on cases alleging violation of the FCRA's stand alone disclosure requirement. Federal district courts are divided on the impact of *Spokeo* on FCRA background check claims. *See Demmings v. KKW Trucking, Inc.*, 2017 WL 1170856 at *10 (D. Or. Mar. 29, 2017) (discussing split in authority). Some courts have dismissed cases for lack of Article III standing rather than remanding those cases to state court. *See e.g., Woods v. Caremark, LLC*, 2016 WL 6908108 (W.D. Mo. 2016).

In light of the challenges Plaintiff faces moving forward, the proposed Settlement represents a fair and adequate resolution of these claims.

### 3.      The Risk, Expense and Complexity of the Case Favor Approval of the Settlement

While this case is not factually complex, the uncertain legal landscape creates a substantial risk of proceeding to certification and beyond. Even if Plaintiff were to prevail in certification, the costs for both parties would mount, and Plaintiff would face "substantial risk of incurring the expense of a trial without any recovery," given that Defendants would argue that class members incurred no actual damages. *Toys 'R' Us FACTA Litig*., 295 F.R.D. at 451. On the other hand, Defendants face catastrophic liability if Plaintiff prevails entirely. This type of "all-or-nothing prospect weighs in favor of approval." *Id*. at 452.

Furthermore, only recently was there substantial litigation on the FCRA, and litigants face a greater chance of changes in case law or statutory enactments that will eliminate liability. *See Torres v. Pet Extreme,* 2015 U.S. Dist. LEXIS 5136, at *14 (E.D. Cal. 2015) (describing an FCRA amendment in 2008 that insulated merchants from liability on printed expiration date on a receipt). Plaintiff thus faces additional "risk that an opinion could issue changing the legal landscape in this relatively new area of statutory law," which favors settlement. *Id*. And even if Plaintiff were to succeed in certifying the class, the "risk that a class action may be

decertified at any time generally weighs in favor of settlement." *Lane v. Facebook, Inc.*, No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762, *4 (N.D. Cal. Mar. 17, 2010) (citing *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)).

Ultimately, in considering the risks of litigation, "a court may consider the vagaries of litigation of immediate recovery by way of compromise to the mere possibility of relief, after protracted and expensive litigation." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010). Here, the Settlement delivers immediate recovery for all Settlement Class Members and avoids the risks and expenses of protracted litigation, including potential interlocutory appeals and an appeal after a trial. This factor supports approving the Settlement. *See In re Portal Software Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, *3 (N.D. Cal. Nov. 26, 2007) (recognizing that the inherent risks of proceeding to... trial and appeal also support the settlement).

**4.    The Risk of Maintaining Class Status Through Trial Favors Approval of the Settlement**

Plaintiff believes that it is likely that a class would have been certified in the case at least as to the federal nationwide FCRA claims. At least three district court decisions have certified such claims. *Manuel v. Wells Fargo Bank*, N.A., 3:14-cv-00238, ECF No. 95 at 24 (E.D. Va Aug. 19, 2015) ("the legality of the forms is of such a nature that it is capable of class wide resolution and satisfie[s] the commonality requirement") (internal quotation omitted); *Reardon v. ClosetMaid*, 2011 WL 1628041, *6 (W.D. Penn. April 27, 2011) ("Here, there are numerous questions of law or fact common to the class. These include, but are not limited to, whether the forms used by [defendant] to obtain consent to procure a consumer report from the class member violated the FCRA."); *Milbourne v. JRK Residential Am., LLC, No.* 3:12CV861, 2014 WL 5529731 (E.D. Va. Oct. 31, 2014).

As to the California law background check claims, it is likely that class certification would have been denied because the California statute expressly

prohibits class actions for statutory damages.  Cal. Civ. Code § 1786.50(a)(1); *see Espinoza v. Bluemercury, Inc*., 2017 WL 10799553 *3 (N.D. Cal. 2017)(J. Tigar)(holding that in federal court in a Rule 23 class action this state law limitation applies). Of course, all California class members have claims under the federal statute.

As there is some risk that class status would not have been maintained in the case, this factor supports certification.

### 5.        The Amount Offered in Settlement Supports Approval

Defendants are paying a total settlement amount of $1,955,000.  The Ninth Circuit has held that the reasonableness of a settlement should be evaluated in relation to the potential compensatory damages, not including any penalties that might be awarded.  *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 964 (9th Cir. 2009); *see also Miller v. CEVA Logistics USA Inc.*, 2015 WL 729638, *7 (N.D. Cal. 2015) (accepting settlement valuation based on damages exclusive of interest and penalties). The class members have relatively small amounts of money at stake, as the FCRA's damages provision limits recovery to between $100 and $1,000 or actual damages, whichever is greater. With 32,137 class members, the potential FCRA statutory damages are between $3,213,700 to $32,137,000.

A recent decision from the Northern District used the $100 per violation penalty as the comparator for determining the fairness of an FCRA settlement. *Leland v. Lagos Stanford Junior University*, 2017 WL 113302 *4 (N.D. Cal. 2017.)

It is reasonable to assume in this case that any jury award would be closer to $100 per violation than to $1,000. Plaintiff's counsel is not aware of any standalone disclosure case that has gone to trial and resulted in a jury verdict.  A 2017 jury verdict from the Northern District illustrates the type of case where a verdict close to the maximum $1,000 per violation would be likely. *Ramirez v. Trans Union LLC*, 2017 WL 5153280 (N.D. Cal. 2017) (Order Denying Motion for New Trial). In *Ramirez supra* at *5 the jury awarded statutory damages of $984.22 per class

member where the defendant violated 15 U.S.C. § 1681e(b) (which requires credit reporting agencies to use "reasonable procedures to ensure maximum possible accuracy") by falsely identifying the class members as being on the federal government list of "terrorists, drug traffickers and others with whom Americans are prohibited from doing business."

Here, the $1,995,000 non-reversionary settlement amount is 62.07% of the amount that would be awarded if the jury awarded a $100 penalty per violation. The gross settlement amount per class member is $62.07. This compares favorably to recent FCRA settlements in stand-alone disclosure cases. The highest gross settlement amount per class member that Plaintiff was able to find on Westlaw (searching California federal district courts in the last year) was $147.22 per class member in *Smith v. CheckAmerica, Inc..,* 2017 WL 3610592 (C.D. Cal. July 18,2017) ($400,000 settlement fund, 2,717 class members). The next highest was $32.10 per class member in *Feist v. Petco Animal Supplies, Inc*., 2018 WL 2933485 (S.D. Cal. 2018)($1,200,000 settlement fund, 37,279 class members). The next highest was $7.31 per class member in *In re Uber FCRA Litigation*, 2018 WL 2047362 (N.D. Cal. May 2, 2018) ($7.5 million settlement fund, 1,025,954 class members). The lowest was $3.30 per class member in *Rohm v. Thumbtack Inc*., 2017 WL 4642409 (N.D. Cal. October 17, 2017) ($225,000 settlement fund, 66,676 class members). Plaintiff's counsel has also been involved in two other FCRA settlements in this district where preliminary or final approval has been granted. In *Burnthorne-Martinez v. Sephora USA, Inc.*, Case No. 4:16-cv-02843 the gross settlement amount was $65.60 per class member. In *Garza v. Brinderson Constructors Inc*., Case No. 15-cv- 05742 the gross settlement amount was $117.02 per class member. (Setareh Decl. ¶¶ 14-15).

### 6.    The Settlement Was Finalized After a Thorough Investigation

Courts may also consider the extent of discovery and the current stage of the litigation to evaluate whether parties have sufficient information to make an

informed decision to settle the action. *See Linney v. Cellular Alaska Partnership*, (9th Cir. 1998), 151 F.3d at 1239. A settlement negotiated at an earlier stage in litigation will not be denied so long as sufficient investigation has been conducted. *See Eisen v. Porsche Cars North American, Inc.*, Case No. 11- 09405, 2014 U.S. Dist. LEXIS 14301, 2014 WL 439006, at *13 (C.D. Cal. Jan. 30, 2014) (finding that counsel had "ample information and opportunity to assess the strengths and weaknesses of their claims" despite "discovery [being] limited because the parties decided to pursue settlement discussions early on.").

Plaintiff engaged in extensive investigation and discovery. (*See* Setareh Decl. ¶¶ 2-6.) Based on this discovery and on their independent investigation and evaluation, Plaintiff's counsel is of the opinion that this Settlement for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate, and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation of this type, as well as the various defenses asserted by Defendants.

**7.      The Views of Experienced Counsel Should Be Accorded Substantial Weight**

The fact that sophisticated parties with experienced counsel have agreed to settle their dispute should be given considerable weight by courts, since "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig*., 47 F.3d 373, 378 (9th Cir. 1995).

Plaintiff was represented by experienced class action counsel possessing significant experience in class action matters including experience in Fair Credit Reporting Act cases involving allegations that the defendant employer failed to provide a legally compliant stand-alone disclosure. (*See* Setareh Decl. ¶¶ 11-17.) Recently, as lead counsel in *Troester v. Starbucks Corporation*, et al., Setareh Law

Group was victorious when the California Supreme Court clarified and rejected the application of the widely adopted federal *de minimis* doctrine to California's wage and hour laws. *Troester v. Starbucks Corp*., 5 Cal.5th 829 (Cal., 2018). *Troester* is arguably one of the most important wage and hour decisions in years, as it effects every hourly employee who works in the state. Setareh Law Group appealed an order to the United States Court of Appeals for the Ninth Circuit in *Gilberg v. California Check Cashing Stores, Inc. et al.* The Court of Appeals found in the plaintiff's favor that the background check document at issue violated the "clarity" requirement of the FCRA. *Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169 (C.A.9 (Cal.), 2019). Setareh Law Group has successfully handled hundreds of class actions and has over 80 Westlaw citable decisions. (Setareh Decl. ¶¶ 11.) Shaun Setareh, principal of Setareh Law Group, received the prestigious California Lawyer Attorney of the Year award from the Daily Journal. (*Id.*)

Likewise, Defendants' counsel McGuireWoods LLP is a nationally recognized defense firm. Thus, the parties' recommendation to approve this Settlement should "be given great weight." *Eisen v. Porsche*, 2014 WL 439006, at *5 (crediting the experience and views of counsel in approving a settlement resolving automotive defect allegations).

### 8.    The Presence or Absence of a Governmental Participant

There is no governmental participant in this case. Therefore, this factor is neutral. *E.g., Mathein v. Pier 1 Imports (U.S.) Inc.,* 2018 WL 1993727 *8 (E.D. Cal. April 27, 2018): "Because there are no separate governmental participants involved in the action, this factor is neutral in the court's analysis of the settlement agreement."

### 9.    The Reaction of the Class is Overwhelmingly Positive

As of the date of this filing, there are no objections to the settlement and only two requests for exclusion. Therefore, the reaction of the class is overwhelmingly positive. This factor supports approval.

**B.      Conditional Class Certification Is Appropriate for Settlement Purposes**

On January 28, 2019 the Court granted conditional certification of the settlement class. No intervening case law or events provide a basis for disturbing that conclusion.

**C.      The Court Should Award The Requested Attorney Fees, Expenses, Settlement Administrator Expenses and Class Representative Service Award**

**1.      The Requested Fee Award Is Reasonable**

Plaintiff seeks a fee award of $498,750, which amounts to 25% of the $1,995,000 Settlement Fund. This fee request is in line with the 25% benchmark and should be granted.

**a) Applicable Law Regarding Attorneys' Fees**

District courts may award attorneys' fees and costs to a prevailing plaintiff where "(1) fee shifting is expressly authorized by the governing statutes; (2) the [defendant] acted in bad faith or willfully violated a court order; or (3) the successful litigants have created a common fund for recovery or extended substantial benefit to the class." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011.) In the class action context, courts generally award attorneys' fees and costs pursuant to the common fund or statutory fee-shifting methodologies. *In re Bluetooth*, 654 F.3d at 941.

Where there is a common fund, "the primary basis of the fee award remains the percentage method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002); *In re Bluetooth*, 654 F.3d at 942.  The Ninth Circuit has consistently awarded attorneys' fees under the common fund method, because "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003.)  "The common fund doctrine is properly applied, however, only if (1) the class of beneficiaries is sufficiently identifiable, (2) the

benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting." *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 271 (9th Cir. 1989). These requirements are met where "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lumpsum [settlement] recovered on his behalf." *Id.*

The Ninth Circuit has set a benchmark of 25% of the common fund.

The proposed settlement herein creates a common fund of $1,995,000. Each settlement class member who cashes the check mailed to them will receive an ascertainable, pro-rata share of the settlement fund.  The residue from uncashed checks will be distributed in a second distribution to class members who cashed the first check. Any additional money left over will go to a *cy pres* recipient which is proposed to be Public Justice.  No money will revert to Defendants. Thus, the common fund doctrine enables the Court to determine a reasonable fee with "some exactitude." *Paul*, 886 F.2d at 271 (internal citation omitted).

While not required, courts may "cross-check" the percentage of the common fund against the lodestar to ensure reasonableness of the fee award. *Vizcaino,* 290 F.3d at 1050 ("The district court applied the lodestar method as a cross-check of the percentage method. Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). The lodestar figure is determined by multiplying the number of hours reasonably expended on the litigation by hourly rates. *In re Bluetooth*, 654 F.3d at 941. The lodestar figure is only the starting point for determining an appropriate fee. *Id.*; *Staton,* 327 F.3d at 965; *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). A court may reduce or enhance the lodestar figure based on several "reasonableness" factors, including the following: (1) the quality of the representation; (2) the benefit obtained for the class; (3) the complexity and novelty of the issues presented; and (4) the risk of non-payment. *In re Bluetooth*, 654 F.3d at 942. As set forth below, all of these factors favor approval.

### b) Class Counsel Provided High Quality Representation that Supports the Requested Fee Award

Plaintiff was represented by experienced class action counsel possessing significant experience in class action matters, including significant experience in Fair Credit Reporting Act cases involving allegations that the defendant employer failed to provide a legally compliant stand-alone disclosure. (*See* Setareh Decl. ¶¶ 11-17.) This substantial experience allowed Class Counsel to provide high quality representation of Plaintiff and the settlement class.

### c) The Settlement Provides Benefit to the Class and Supports the Requested Fee Award

Class members will receive a direct financial benefit from this settlement. The gross settlement amount is $62.07 per class member, with an estimated net settlement payment of $47 per class member. Class members will not have to submit a claim form but will be mailed checks directly. The results achieved compare favorably to other recent FCRA cases. *See Rohm v. Thumbtack, Inc.,* 2017 WL 4642409 (N.D. Cal. 2017)(granting final approval) involved a claims made settlement (albeit a non-reversionary one) where 66,676 class members shared in a $225,000 settlement or a gross recovery of $3.30 per class member. Similarly, *In re Uber FCRA Litigation,* 2017 WL 2806698 (N.D. Cal. 2017) (granting preliminary approval) involved a claims made settlement (also non-reversionary) where 1,025,954 class members shared in a $7.5 million settlement or a gross recovery of $7.31 per class member.

### d) The Complexity of the Issues Supports the Fee Award

The risks of the litigation, including the high uncertainty regarding the law concerning the FCRA, the risk that the forms would be found to be compliant and the risk that if Defendants' conduct was found not to be willful class members would recover nothing, support the fee award. As discussed in further detail above, the uncertain legal landscape of the FCRA creates a substantial risk of proceeding

to certification and beyond. Although Plaintiff believes that he would have prevailed had litigation continued through class certification and ultimately trial, considerable risks, delays and uncertainties nevertheless exist with continued litigation. The parties have achieved a fair Settlement that reflects a meaningful recovery on behalf of Settlement Class Members and that merits the Court's final approval.

### e) The Risk of Nonpayment Supports the Requested Fee Award

At this juncture, the Settlement would entitle each Settlement Class Member to a significant recovery. In contrast, if the case would continue in litigation, even if Plaintiff prevailed on a class certification motion, any appeal by Defendants would prolong the litigation and delay remedies to the Class. In fact, courts have found such risks to support an upward adjustment of the 25% benchmark. *See Deaver v. Compass Bank*, No. 13-cv-222-JSC, 2015 WL 8526982, at *11 (N.D. Cal. Dec. 11, 2015) (awarding 33% of common fund and concluding that "[g]iven the significant challenges Plaintiff would have faced in maintaining this litigation through class certification and trial, the results achieved in this case are very favorable."); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) (awarding one third of common fund based on significant risk of continued litigation where settlement provided only 36% of potential damages.)

### f) The Contingent Nature of the Settlement Supports the Requested Fee Award

The contingent nature of the litigation supports the requested fee. "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299. By undertaking a class action on a contingency fee basis, counsel not only must turn away other income generating opportunities but must take on the

risk of never receiving compensation at all. *Beaver v. Tarsadia Hotels,* No. 11-cv-01842-GPC-KSC, 2017 WL 4310707, at *13 (S.D. Cal. Sept. 28, 2017). A contingent fee must be higher than a fee for the same legal services paid as they are performed because it "compensates the lawyer not only for the legal services he renders but for the loan of those services." *Id.* (quoting *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 580 (2004)). Here, Class Counsel represented Plaintiff and the Settlement Class on a contingency fee basis, with no guarantee of payment. (Setareh Decl. ¶ 20).

**g) The Reaction of the Settlement Class Supports the Fee Award**

The reaction of the Settlement Class supports the requested fee. To dates there are no objections and only two requests for exclusion. *In re Heritage Bond Litig.*, 2005 WL 1594389, at *15 ("absence of objections from the class is also a factor in determining the proper fee award").

**f) A Lodestar Analysis Also Supports The Requested Fee**

Class Counsel's lodestar as of April 25, 2019 is $189,002. (Setareh Decl. ¶ 19). The hours and hourly rates of the timekeepers on this case are as follows:

| Attorney | Bar Date | Hourly Rate | Hours | Lodestar |
|---|---|---|---|---|
| Shaun Setareh | 1999 | $750 | 75 | $56,250 |
| Thomas Segal | 2002 | $650 | 65.25 | $42,414.50 |
| Farrah Grant | 2013 | $450 | 160.75 | $72,337.50 |
| Ashley Batiste | 2017 | $375 | 48 | $18,000 |

Additional details about the qualifications of these attorneys are set forth in Declaration of Shaun Setareh. (Setareh Decl. ¶ 18).

The above rates are within the range of rates approved by courts for complex class actions, including wage-and-hour actions. *See, e.g., Wang v. Chinese Daily News, Inc.,* 2008 U.S. Dist. LEXIS 123824 at 8–9 (C.D. Cal. filed Oct. 3, 2008) (in a wage-and-hour action, approving 2008 rates of up to $800 per hour*), vacated on other grounds*, 132 S. Ct. 74 (2011); *Rutti*, 2012 WL 3151077 at 11 (in a wage-and-hour action, approving 2012 rates of up to $750 per hour); *Pierce v. County of*

*Orange*, 905 F. Supp. 2d 1017, 1036 & n.16 (C.D. Cal. 2012) (approving 2012 rates of up to $850 per hour); *In re HP Laser Printer Litig.*, 2011 WL 3861703 at 5–6 (C.D. Cal. filed Aug. 31, 2011) (approving rates of up to $800 per hour); *Perfect 10 v. Giganews Inc.,* 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. 2015) (approving 2015 rates of $750 for an 18 year attorney, $640 for a 12 year attorney, and $640 for a 7 year attorney, and $505 for a 3 year attorney); *Stuart v. RadioShack Corp.*, No. C-07-4499, 2010 U.S. Dist. LEXIS 92067, at *16 (N.D. Cal. Aug. 9, 2010) (finding rates ranging between $600 and $1,000 reasonable); *In re Apple Inc. Secs. Litig.*, No. 5:06-CV-05208, 2011 U.S. Dist. LEXIS 52685, at *16 (N.D. Cal. May 17, 2011) (approving hourly rate of $836); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *9 (approving hourly rates up to $1000); *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*, No. C 10-02124 SI, 2014 WL 186375, at *2 (N.D. Cal. Jan. 16, 2014) (approving hourly rates up to $850); *Kearney v. American Honda Motor Am.* 2013 U.S. Dist. LEXIS 91636 *24 (approving hourly rates of $650-$800 for senior attorneys in consumer class action); *Holloway v. Best Buy Co*., C-05-5056-PJH (MEJ) (N.D. Cal.) (approving 2011 partner rates of $825 to $700 an hour).

The requested $498,750 fee is only a 2.64 multiplier over the lodestar amount. This is within the multiplier range typically applied by district courts. *See, e.g., Bellinghausen v. Tractor Supply Co.* 306 F.R.D. 245, 264 (N.D. Cal. 2014) (54 percent of lodestar multipliers fall within the 1.5 to 3.0 range, and 83 percent of multipliers fell within the 1.0 to 4.0 range); *Hopkins v. Stryker Sales Corp*., No. 11-CV-02786- LHK, 2013 WL 496358, at *5 (N.D. Cal. Feb. 6, 2013) (multiplier of 2.86); *In re TFT-LCD (Flat Panel) Antitrust Litig., 2013 WL 1365900,* at *8 (multipliers ranging on average between 2.4 – 2.6); *Pokorny,* 2013 WL 3790896, at *2 (multiplier of 2.2); *see also Milliron v. T-Mobile USA, Inc.,* 423 F. App'x 131, 135 (3d Cir. 2011) (approving district court's use of 2.2 multiplier); *Di Giacomo v. Plains All Am. Pipeline, Nos.* 99–4137 & 99–4212, 2001 WL 34633373, at *10–11

(S.D. Fla. Dec. 19, 2001) (5.3 multiplier); *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (4.65 multiplier); *In re Aremissoft Corp. Sec. Litig.,* 210 F.R.D. 109, 134–35 (D.N.J. 2002) (4.3 multiplier); *Sobel v. Hertz Corp.,* No. 306-CV-00545-LRH-RAM, 2014 WL 5063397, at *10 (D. Nev. Oct. 9, 2014) (multiplier of 2.0).

The various *Bluetooth* factors support application of a positive multiplier in this case. Here, Class Counsel are highly experienced class action litigators and prevailed against a nationally recognized high caliber defense firm. The results obtained for the class are excellent particularly in light of the risks in the case. Finally, the contingent nature of the action supports an upward adjustment. Therefore, the requested attorneys' fees of $498,750 should be awarded.

## 2.   Plaintiff's Litigation Expenses Should be Reimbursed

Defendants have agreed to pay Class Counsel's litigation expenses in an amount not to exceed $20,000 as part of the settlement out of the Settlement Amount. (Settlement Agreement ¶ 1(f)). Prevailing parties may recover as part of statutory attorney fees "litigation expenses when it is the prevailing practice in the given community for lawyers to bill those costs separately from their hourly rates." *Trs. Of the Constr. Indus and Laborers Health and Welfare Trust v. Redland Ins. Co.,* 460 F.3d 1253, 1258 (9th Cir. 2006.) In California, attorneys are reimbursed for out of pocket expenses such as "1) meals, hotels, and transportation; 2) photocopies; 3) postage; 4) filing fees; 5) messenger and overnight delivery; and 6) online legal research." *Johnson v. General Mills, Inc.,* 2013 WL 3213832 *6 (C.D. Cal. 2013.) Here, Plaintiff has incurred $6,510.61 in litigation expenses including mediator fees, travel, postage, Westlaw legal research, mileage and parking, PACER, photocopying, and court filing fees and estimates an additional $40 in expenses for delivering courtesy copies of the final approval motion and attending the final approval hearing. (Setareh Decl. ¶ 21.) Plaintiff seeks an award of $6,550.61

(Plaintiff will submit a declaration if the actual costs are less). This is less than the $20,000 allowed under the Settlement Agreement. (Settlement Agreement ¶ 1(f).)

### 3.   The Settlement Administrator's Expenses Should Be Approved

The charges for the Settlement Administrator KCC are currently estimated to be $62,898.49. (Neville Decl. ¶ 13). This is lower than the $69,250 KCC previously estimated that it would cost to administer the settlement. The Settlement Agreement states that administration costs are estimated to be approximately $69,250. (Settlement Agreement ¶ 1(z).) KCC's costs are reasonable and should be approved. (Setareh Decl. ¶ 22).

### 4.   The Court Should Approve An Incentive Award in The Amount of $5,000

Plaintiff requests an incentive award of $5,000. Plaintiff has assisted with the prosecution of the case including providing counsel information about Defendants' policies and practices, assisting counsel in preparing for the mediation and reviewing settlement and other case documents.   (Declaration of Jorge Perez ("Perez Decl.") ¶ 7.) He undertook to prosecute the case despite the risk of a cost judgment against him, and despite the potential risk that prospective employers would hold it against him. (Perez Decl. ¶ 8.) The requested incentive award is reasonable and should be approved.

## IV.   <u>CONCLUSION</u>

The parties have negotiated a fair and reasonable settlement.  Accordingly, Plaintiff moves the Court to grant final approval, award the requested attorney fees and litigation expenses, settlement administrator expenses and incentive award.

//

//

//

//

Respectfully submitted,

Dated:  April 25, 2019                    SETAREH LAW GROUP

                                      BY  /s/ Shaun Setareh
                                          Shaun Setareh
                                          Attorneys for Plaintiff
                                          JORGE PEREZ

*Perez v Performance Food Group Inc.*                    Notice of Motion and Motion for Final Approval
                                                              of Class Action Settlement

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1